**In re ASOUSA PARTNERSHIP,**
**Debtor.**

**Asousa Partnership, Plaintiff,**

**v.**

**Pinnacle Foods, Inc., Defendant.**

**Bankruptcy No. 01–12295DWS.**
**Adversary No. 01–0112.**

United States Bankruptcy Court,
E.D. Pennsylvania.

July 2, 2001.

Steven M. Coren, Esquire, Kaufman, Coren, Ress & Weidman, P.C., Eric L. Frank, Esquire, Miller, Frank & Miller, Philadelphia, PA, for Plaintiff.

John A. Gallagher, Esquire, Norristown, PA, for Defendant.

Dave P. Adams, Esquire, Office of the U.S. Trustee, Philadelphia, PA, United States Trustee.

## *OPINION*

DIANE WEISS SIGMUND,
Bankruptcy Judge.

Before the Court is the motion ("Motion") of defendant, Pinnacle Foods, Inc. ("Pinnacle"), seeking mandatory abstention and remand, discretionary abstention and remand or equitable remand of this action ("Action") to the Court of Common Pleas of Montgomery County ("State Court") where it was originally commenced. Plaintiff/Debtor, Asousa Partnership ("Debtor"), removed the Action to this Court after filing for bankruptcy. On April 24, 2001, a hearing was held on the motion; testimonial evidence was admitted. At the conclusion of the hearing, the Motion was taken under advisement. Upon consideration, I grant the Motion and remand this proceeding back to State Court.

**BACKGROUND**

Debtor is a partnership comprised of two partners, namely Theodore C. Asousa,

Jr. ("Asousa") and his father, Theodore C. Asousa. Debtor owns the following three properties: (i) an office condominium (the "Office Condo") located at 1570 McDaniel Drive in West Chester, Pennsylvania; (ii) a beach house (the "Beach House") located at 1001B Long Beach Boulevard in North Beach, New Jersey; and (iii) a USDA approved manufacturing facility (the "Facility") located at 980 Glasgow Street in Pottstown, Pennsylvania. While the mortgage on the Facility is current, the mortgages on the other two properties are not.

Debtor is one month in arrears on the mortgage for the Office Condo, but that is the only payment still due and owing on the mortgage. Taxes and association fees are also owed on this property. Debtor rents the Office Condo to TCA, Inc. ("TCA"), an entity which Asousa apparently controls, for $3,500 per month. However, TCA is not currently paying rent on the property because it is being "credited" for money which it previously provided to the Debtor to pay the mortgage on the Facility when a previous tenant for that property failed to pay rent.[1]

The Beach House consists of two rental units, each of which is rented for an eight week period during the summer for approximately $1,350 to $1,550 per week. The income from the property is used to pay the monthly mortgage which is $675. Debtor is several months in arrears on the mortgage. The mortgagee refused to accept Debtor's March payment on the ground that it was foreclosing upon the property.

Debtor purchased the Facility on July 29, 1999 for $720,000 plus closing costs. The mortgagee on the property, Pennsylvania Business Bank, was given a wraparound mortgage on all three of the Debt-or's properties. Initially, Debtor leased the Facility to Camelot Foods, but it failed to pay rent and went out of business. On or about May 1, 2000, Plaintiff entered into a lease (the "Lease") for the Premises with Pinnacle. While Pinnacle's monthly rent of $7,511.69 is equal to the monthly mortgage on the Premises, Pinnacle is also responsible for payment of all taxes on the property.

In October, 2000, Pinnacle failed to make its rental payment when due. While it eventually paid rent for that month, it ceased paying rent the following month. On or about November 13, 2000, Debtor commenced the Action against Pinnacle in State Court by filing a two-count complaint ("Complaint"). Motion ¶ 1; Plaintiff–Debtor's Answer to Defendant's Motion to Exercise Abstention and Remand ("Answer") ¶ 1. In the Complaint, Debtor alleges that Pinnacle defaulted on its rent payments under the Lease and, consequently, that Debtor terminated the Lease as of November 7, 2000. *See* Complaint (attached as Exhibit A to Motion). In Count I, Debtor seeks to have Pinnacle ejected from the Premises and to "have a writ of possession issu[ed] forthwith." Complaint ¶¶ 1–16. In Count II, Debtor seeks rent and other monetary damages which it claims are due and owing under the Lease. *Id.* ¶¶ 17–23.

Pinnacle filed an answer ("Answer to Complaint") to the Complaint with new matter and a counterclaim ("Counterclaim"). Motion ¶ 4; Answer ¶ 4. In Count I of the Counterclaim, Pinnacle alleges that Debtor breached the Lease by failing to deliver the Premises in a usable condition, failing to make improvements and repairs thereto as required by the

---

1. When Asousa testified regarding this practice, he was cautioned by the Court to discuss the legality of it with Debtor's counsel.

Lease and failing to abate rent otherwise owed by Pinnacle in recognition of the labor costs and expenses which it incurred in removing debris, rubbish and equipment from the Premises after Debtor wrongly refused to do so. *See* Answer to Complaint ¶¶ 33–55 (attached to Motion as Exhibit B). Pinnacle contends that it is entitled to specific performance of the lease and/or a rent abatement. *Id.* ¶ 66. In Count II, Pinnacle alleges that capital improvements and repairs which it made to the Premises substantially increased its value and that it is entitled to restitution for the value of such improvements and repairs. *Id.* ¶¶ 67–69.

On December 29, 2000, Debtor filed a Reply to New Matter and an Answer with New Matter to Pinnacle's Counterclaim. Motion ¶ 7; Answer ¶ 7. Shortly thereafter, Pinnacle filed preliminary objections ("Preliminary Objections") to Debtor's new matter to Pinnacle's Counterclaim. Motion ¶ 8; Answer ¶ 8. On January 24, 2001, Debtor answered the Preliminary Objections. Motion ¶ 8; Answer ¶ 8.

Less than a month later, on February 20, 2001, Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. Motion ¶ 9; Answer ¶ 9. According to the Debtor's Schedules,[2] it has seven secured creditors and four unsecured nonpriority creditors. *See* Schedules D & E; Amended Schedule F. The secured creditors consist of the following: (i) the mortgagee on the Beach House, the mortgagee of the Office Condo, and Pennsylvania Business Bank which has the wraparound mortgage; (ii) the West Chester ATSA School District for real estate taxes owed on the Office Condo; (iii) the Pottstown Borough and County and the Pottstown School District for real estate taxes owed on the Facility; and (iv) the Borough of Surf City for water/sewer charges owed for the Beach House. *See* Schedule D. The unsecured creditors include the Debtor's two principals for loans which they made; TCA which Asousa apparently controls; and the Westtown Business Center Association. *See* Amended Schedule F.

On February 21, 2001, Debtor filed a Notice of Removal of the Action, claiming the right to remove under 28 U.S.C. § 1334(b) and 28 U.S.C. § 1452. Motion ¶ 10; Answer ¶ 10. At the time of removal, the State Court had not yet decided Pinnacle's preliminary objections, Exhibit E to Motion at ¶ 4, and no discovery had been taken by the parties. In paragraph 5 of the Notice of Removal, Debtor alleged that upon removal, the Action would be a "non-core proceeding." Notice of Removal ¶ 5.

Thirty days later, on March 23, 2001, Pinnacle filed its Motion. With regard to its contention that the requirements of mandatory abstention are met here, Pinnacle asserts, *inter alia,* that the Action could be timely adjudicated in State Court. In support of this allegation, Pinnacle attached to its Motion the State Judiciary Report issued for the year 2001 by the Honorable Joseph A. Smyth, President Judge of the Montgomery County Court of Common Pleas.[3] According to this report,

---

**2.** I shall take judicial notice of the Debtor's Schedules. While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, *In re Aughenbaugh,* 125 F.2d 887 (3d Cir.1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." *In re Indian Palms Assoc.,* 61 F.3d 197, 205 (3d Cir.1995) (*citing* Fed. R.Evid. 201(f) advisory committee note) (1972 proposed rules).

**3.** Debtor admitted in its Answer that Exhibit "D" is a copy of the State Judiciary Report for 2000 as Pinnacle alleged. *See* Answer ¶ 15.

the civil trial inventory for the county is in "great shape." The report states:

> At the end of 1999, there were just 480 cases in the inventory. Over the past three (3) years, the civil trial inventory has been reduced by 65%. This trend has continued in 2000, with just 429 cases in the trial inventory as of June 30th. As of today's date, the time from praecipe to first listing is between 2 to 3 months. As noted last year, it simply can't get much better than this—by local rule the Court Administrator's Office must give at least 50 days notice for a first listing.

Exhibit D to Motion. Pinnacle also asserts that it intended to demand its right to a jury trial in State Court. Motion ¶ 28. In support of this allegation, Pinnacle attached to its Motion an affidavit of its counsel, John Gallagher, Esquire, attesting to the fact that he intended to demand a jury trial in State Court on Pinnacle's behalf. *See* Exhibit E to Motion.

On April 23, 2001, Debtor filed its Answer to the Motion. In the Answer, Debtor retreats from its previous characterization of this proceeding as "non-core" and asserts, instead, that the proceeding is "core." Answer ¶¶ 22, 38.

At the hearing on the Motion only Asousa testified. He provided the facts set forth above regarding Debtor's properties. With regard to the Facility, he also testified that it is currently listed for sale for $2.1 million. On direct examination, Asousa was asked to explain what happened between November, 2000 and February, 2001 which caused the Debtor to file for bankruptcy. He testified that when the Action was filed in State Court, he was told that it might take approximately 3 to 4 years to litigate. He thought Debtor could survive for that period of time based on TCA's income and his father's equity investments.[4] However, shortly thereafter, TCA's business slowed and the value of his father's stock holdings decreased. Asousa stated that while he did not want the Debtor to file for bankruptcy, he needed to protect his assets. He explained that he did not have any money to pay the tax bills for the Debtor's properties. In response to cross-examination, Asousa testified that he did not know how much his father had lost in the stock market between December 2000 and February of 2001.

## DISCUSSION

■ As I noted above, Pinnacle seeks to have this Court: (i) exercise mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) and remand this matter to State Court; (ii) exercise discretionary abstention under 28 U.S.C. § 1334(c)(1) and remand this matter to State Court; or (iii) remand this matter to State Court on equitable grounds pursuant to 28 U.S.C. § 1452(b).[5] Significantly, section 1334(c) does not authorize a court to "remand" a matter. However, prior decisions in this district have held that where grounds for mandatory or discretionary abstention are present under § 1334, then remand is proper under § 1452(b). *Computerware, Inc. v. Micro Design, Inc. (In re Micro Design, Inc.),* 120 B.R. 363, 366 (E.D.Pa. 1990) (adopting report and recommendations of bankruptcy court); *In re Joshua Slocum,* 109 B.R. 101, 105 (E.D.Pa.1989) (adopting report and recommendations of bankruptcy court).

---

4. The manner in which TCA's income would flow to Debtor was not explained.

5. Pursuant to § 1452(b), the court to which a claim or cause of action has been removed "may remand such claim or cause of action on any equitable ground."

## I. Mandatory Abstention

 The basis for mandatory abstention is set forth in § 1334(c)(2), which states, in relevant part:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). As held in *Federal National Mortgage Association v. Rockafellow (In re Taylor)*, 115 B.R. 498 (E.D.Pa.1990) (adopting report and recommendations of bankruptcy court), mandatory abstention pursuant to the aforementioned provision is appropriate only when the following six requirements are met:

(1) a timely motion is made;

(2) the proceeding is based upon a state law claim or state law cause of action;

(3) the proceeding is related to a case under Title 11;

(4) the proceeding does not arise under Title 11;

(5) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and

(6) an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

*Id.* at 500. The party seeking mandatory abstention has the burden of satisfying each of these requirements. *Pinnacle Corporation v. Long-term Capital Management, L.P. (In re Pinnacle Corporation)*, 237 B.R. 240, 242 (Bankr.D.Conn. 1999).

Debtor admits that the first, second, fourth and fifth requirements above are met. *See* Answer ¶ 14(b), (d) & (e).[6] However, it contends that the third and sixth requirements are lacking. *Id.* ¶ 37.[7] My discussion will focus on these two requirements.

### A. The Third Requirement

 As noted above, to satisfy the third requirement for mandatory abstention, the adversary proceeding must be "related to a case under Title 11." In

---

6. With regard to the first requirement that the abstention motion be timely filed, Pinnacle asserted in its Motion that this requirement was met because the Motion was "filed on March 1, 2001, just 8 days after the filing of the Notice of Removal." Motion ¶ 14(a). Debtor denied this assertion on the ground that the Motion was filed, as I noted above, on March 23, 2001 and not March 1, 2001. Nevertheless, Debtor does not dispute that the Motion was timely filed. Indeed, it was filed within thirty (30) days of Debtor's filing of the Notice of Removal.

7. At the hearing on the Motion, Pinnacle argued that Debtor is bound by the statement which it made in its Notice of Removal that this adversary proceeding is a non-core proceeding. Notably, there is case law to the

contrary. *See WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F.Supp.2d 596, 607–08 (S.D.Tex.1999) (rejecting contention that court was bound by defendant's statement in notice of removal that action in state court was "non-core proceeding."); *J.T. Moran Financial Corp. v. American Consolidated Financial Corporation (In re J.T. Moran Financial Corp.)*, 124 B.R. 931, 941 (S.D.N.Y.1991) (concluding that statement by debtor in its complaint that "its action against the defendants was a non-core proceeding ... need not be regarded as a nonrebuttable judicial admission in its pleadings."). In any event, I find it unnecessary to rule on this issue since I conclude, for other reasons, that this matter is a non-core proceeding.

*Halper v. Halper,* 164 F.3d 830 (3d Cir. 1999), the Third Circuit stated that the "test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 837 (*quoting Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). The Third Circuit further explained that "[b]ankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankrupt estate.'" 164 F.3d at 837 (*quoting In re Guild & Gallery Plus, Inc.,* 72 F.3d 1171, 1181 (3d Cir.1996)). Under this test, this adversary proceeding "is related to a case under Title 11." Since Debtor is seeking to asserts its right under the Lease and state law to eject Pinnacle from the Facility, the outcome of the proceeding could affect Debtor's rights. In addition, since Pinnacle has asserted a counterclaim against Debtor for restitution based on capital improvements which Pinnacle alleges it made to the Facility, the outcome of the proceeding could affect Debtor's liabilities. Moreover, Debtor derives substantial income from renting the Facility of which it is currently being deprived and is trying to sell it. As such, the outcome of this adversary proceeding could impact the handling of Debtor's bankruptcy estate.

Nevertheless, Debtor contends that the instant adversary proceeding constitutes a core proceeding and is, therefore, *not* related to a case under title 11 because it: (i) is, in substance, a turnover proceeding; and/or (ii) involves, in substance, a proof of claim against the estate.[8] Debtor cites to 28 U.S.C. § 157(b)(2) which states, in pertinent part:

> Core proceedings, include, but are not limited to—
>
> \* \* \* \* \* \*
>
> (B) allowance or disallowance of claims against the estate . . . ;
>
> \* \* \* \* \* \*
>
> (E) orders to turn over property of the estate[.]

28 U.S.C. § 157(b)(2)(B) & (E).

According to Debtor, this matter is, in substance, a turnover proceeding because Debtor is asserting its entitlement to, and seeks an order granting it, possession of the Facility which it owns. Answer ¶ 38(a). As authority for this argument, Debtor cites *Craig v. McCarty Ranch Trust (In re Cassidy Land and Cattle Co., Inc.),* 836 F.2d 1130 (8th Cir.), *cert. denied,* 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988),[9] wherein the Court of Appeals

---

8. Mandatory abstention only arises in related cases and not core proceedings. *In re Joshua Slocum, Ltd.,* 109 B.R. 101, 106 (E.D.Pa. 1989); *In re Gurst,* 75 B.R. 575, 577 (Bankr. E.D.Pa.1987); *Schaffler v. McDowell National Bank (In re Yobe),* 75 B.R. 873, 875 (Bankr. W.D.Pa.1987).

9. As additional authority, Debtor cites *Schachter v. Tolassi (In re 105 East Second Street Associates),* 207 B.R. 64 (Bankr. S.D.N.Y.1997), and *John Hancock Mutual Life Insurance Company v. Watson (In re Kincaid),* 917 F.2d 1162 (9th Cir.1990). In *Schachter,* the Chapter 7 trustee moved for summary judgment declaring that the defendant's pre-

petition unsecured claim for rental overcharges could not be set off against the Trustee's post conversion claim for rent. The trustee requested a monetary judgment for rental arrears and an order directing the turnover of that amount. Without any discussion of the issue, the bankruptcy court ruled that it had jurisdiction over the matter since it was a core proceeding under § 157(b)(2)(E). 207 B.R. at 65 n. 1. Because of the paucity of the analysis, it is impossible to draw any guidance from this case.

*Watson, supra,* involved a proceeding by the trustee against the debtor's employer to compel turnover of the debtor's monetary inter-

for the Eighth Circuit held, *inter alia*, that an adversary proceeding which the trustee commenced to foreclose upon two mortgages held by the debtor constituted a turnover proceeding over which the bankruptcy court had jurisdiction. *Id.* at 1132–33. In so holding, the Eighth Circuit reasoned as follows:

> The mortgage in the instant case contained an acceleration clause which provided that the entire debt under the note would be due and payable in the event of a default. [Appellant's] nonpayment of amounts owing constituted a default within the terms of the mortgage instrument and, therefore, rendered the note fully matured. It follows, then, that the foreclosure proceeding initiated by [the trustee] amounted to an action based on the turnover of a matured debt that is property of the bankrupt estate within the meaning of 11 U.S.C. § 542(b). Given that a turnover proceeding is expressly enumerated as a core proceeding under section 157(b)(2)(E), we hold that the bankruptcy court had proper jurisdiction to conduct the foreclosure proceeding.

*Id.* (citations omitted). I find this Eighth Circuit distinguishable from the matter at hand for a significant reason. It was undisputed in *Craig* that at the time of the foreclosure proceeding, the "mortgages were in default." *Id.* at 1131. Consequently, the determination of the debtor's right to foreclose upon the property was a matter of applying the terms of the mortgage instruments. In contrast, in the instant proceeding, Pinnacle vigorously disputes that it has defaulted under the Lease. Consequently, unlike in *Craig*, the first issue that must be addressed in resolving the instant proceeding is whether Pinnacle is in default under the Lease. In this respect, the dispute here is a "step" away from a turnover action. *See Marshall v. Michigan Department of Agriculture (In re Marshall)*, 118 B.R. 954, 962 (W.D.Mich.1990) (concluding that since there was a legitimate dispute as to whether the debtor was entitled to recover any money from the defendant under the contract at issue, the adversary proceeding was a "step away" from being a turnover proceeding and, therefore, did not constitute a core proceeding under § 157(b)(2)(E)).

■ Turnover under 11 U.S.C. § 542 is a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate. *In re Rosenzweig*, 245 B.R. 836, 839–40 (Bankr.N.D.Ill.2000). *See also Creative Data Forms, Inc. v. Pennsylvania Minority Business Development Authority (In re Creative Data Forms, Inc.)*, 41 B.R. 334, 336 (Bankr. E.D.Pa.1984) ("[I]f the debtor does not have the right to possess or use the property at the commencement of the case, a turnover action cannot be a tool to acquire such rights."), *aff'd*, 72 B.R. 619 (E.D.Pa. 1985), *aff'd*, 800 F.2d 1132 (3d Cir.1986) (table). It cannot be used to determine the rights of parties in legitimate contract disputes. *FLR Company, Inc. v. Brant*

---

ests in the company's 401(k) plan. The Ninth Circuit held that the proceeding was a turnover action because the trustee was trying to force the administrator of the 401(k) plan to turn over a sum certain in which the debtor had a present vested interest. In so holding, the Ninth Circuit distinguished between actions in which a trustee is seeking to obtain property owned by the debtor versus actions in which the trustee is seeking to obtain prop-

erty owed to the debtor but belonging to a third party. 917 F.2d at 1164–65. While the Debtor in the instant case is seeking to obtain property it owns, it transferred the right to possess the property to Pinnacle under the Lease. Whether Debtor is entitled to regain possession of the Property is in dispute. For that reason, I reject the assertion that this proceeding constitutes a true turnover proceeding.

*Construction (In re FLR Company)*, 58 B.R. 632, 634 (Bankr.W.D.Pa.1985). *See also United States v. Inslaw, Inc.*, 932 F.2d 1467, 1471–72 (D.C.Cir.1991) (ruling that turnover provisions could not be used by debtor to obtain possession of computer software because the defendant held possession of the same under a claim of ownership based on its view of the parties contractual agreements), *cert. denied*, 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992); *Hirsch v. The London Steamship Owners' Mutual Life Insurance Association Limited (In re Seatrain Lines, Inc.)*, 198 B.R. 45, 50 n. 7 (S.D.N.Y.1996) (adversary proceeding seeking insurance proceedings was not a turnover proceeding since defendants vigorously disputed their obligation to pay such proceeds); *Tenet Healthcare Corporation v. Williams (In re Allegheny Health Education and Research Foundation)*, 233 B.R. 671, 677–78 (Bankr. W.D.Pa.1999) ("[A]ctions seeking a turnover of assets whose title is in dispute can only constitute, at the most, noncore rather than core proceedings given that such actions are not true turnover actions within the meaning of § 542(a) and 28 U.S.C. § 157(b)(2)(E)."). Since Pinnacle disputes Debtor's claims that it breached the Lease and that Debtor is entitled to regain possession of the Facility as a result thereof, the dispute between the parties regarding Debtor's right to possess the Facility is a "legitimate contract dispute." Pinnacle holds possession of the Facility under a claim of legal right. Consequently, this action is not a true turnover proceeding.

In reaching this conclusion, I am also guided by the Third Circuit's decision in *Pittsburgh Business Development Corp. v. Braunstein (In re Beard)*, 914 F.2d 434 (3d Cir.1990). In this case, the Chapter 7 trustee instituted an adversary proceeding seeking to recover prepetition and postpetition rent due under a pre-petition lease and for a declaration that an alleged purchase option held by the defendant was invalid. The defendant denied liability and counterclaimed seeking damages allegedly caused by the poor condition of one of the leased buildings. In ruling that the proceeding was an entirely non-core matter related to a case arising under Title 11, the Third Circuit specifically rejected the notion that the proceeding fell within the scope of § 157(b)(2)(E) for turnover proceedings. The Third Circuit stated:

[A turnover action] is limited to property in the actual or constructive possession of the bankruptcy court. Constructive possession

exists where the property was in the physical possession of the debtor at the time of the filing of the petition in bankruptcy, but was not delivered by him to the trustee; where the property was delivered to the trustee, but was thereafter wrongfully withdrawn from his custody; where the property is in the hands of the bankrupt's agent or bailee; where the property is held by some other person who makes no claim to it; and where the property is held by one who makes a claim, but the claim is colorable only.

*Taubel–Scott–Kitzmiller Co. v. Fox*, 264 U.S. 426, 432–33, 44 S.Ct. 396, 398–99, 68 L.Ed. 770 (1924).

While a chose in action is property of the estate, and the bankruptcy court can determine who owns it, "the bankruptcy court does not have summary jurisdiction to *enforce* a chose in action against the bankrupt's obligor, even when the bankrupt's rights seem clear." *In re Lehigh and Hudson River Ry. Co.*, 468 F.2d 430, 433 (2d Cir.1972) (emphasis in original). Though *Lehigh and Hudson* was decided under the 1989 law, the principle seems perfectly appropriate to distinguish between a "core" turnover

proceeding and a "non-core" state-law contract action.

914 F.2d at 444.

The instant case is factually identical to *Beard* except in the following two respects: (i) Debtor commenced the instant proceeding in State Court prior to the filing of its bankruptcy case which, if it has any bearing whatsoever on the issue, weighs in favor of concluding this proceeding is not a turnover proceeding since, when it was instituted, no bankruptcy case even existed; and (ii) in addition to seeking an award of monetary damages for the rent and other charges which it claims are owed under the Lease, Debtor is seeking to obtain possession of the leased premises. Debtor focuses in particular on the latter distinction as requiring a different outcome. I respectfully disagree. First, Pinnacle makes a claim to the property which at this juncture I cannot conclude is "colorable only." Second, the question of entitlement to possession of the Facility is no different than entitlement to rental arrears. It depends on the parties' contractual agreement and state law which are the subject of a bona fide dispute. Accordingly, I find the request for possession provides no basis for reaching a different decision here than the Third Circuit did in *Beard* in connection with the request for rent.

Debtor also contends that this adversary proceeding is a core proceeding because Pinnacle's Counterclaim constitutes, " 'in substance,' a proof of claim against the estate." Answer ¶ 38(c). In support of this argument, Debtor cites *In re RBGSC Investment Corporation*, 253 B.R. 369 (E.D.Pa.2000), wherein the district court held that a state court action asserted pre-petition against the debtor and other non-debtor co-defendants and thereafter removed to the bankruptcy court constituted a core proceeding because it "amount[ed] to a proof of claim against the estate." *Id.* at 379. In so ruling, the district court reasoned as follows:

> In the state court complaint, the Appellants brought a variety of claims against [the debtor], including those for injunction, specific performance, defamation, and breach of various agreements. While the Complaint also included non-debtors as defendants—namely the other Appellees here—the presence of non-debtor defendants does not prevent a state court action from amounting to a proof of claim against the estate, *see e.g., In re Labrum & Doak, LLP*, No. 98-10215DAS, 1999 WL 138875, at *6-*9 (Bankr.E.D.Pa. March 11, 1999). In particular, here, where the links between and among the various parties, including the state court plaintiffs and the debtor and non-debtor defendants, are so intertwined by virtue of the many agreements defining these relationships, we cannot see how Appellants' state court claims could be viewed, in the wake of the bankruptcy, as anything other than a claim on the estate.

> An examination of the actual proof of claim Appellants submitted against the estate confirms this assessment. The first supporting document attached to the proof of claim is in fact the complaint from the state court action. This certainly supports the idea that the state court action was in its substance a claim against the bankrupt estate and that, by extension, the state court proceeding here was a "core" proceeding for the bankruptcy.

*Id.* at 379-80 (citations to record omitted). While it is somewhat unclear, the district court appears to have based its ruling that the pre-petition state law action constituted a proof of claim against the estate solely on the ground that the action asserted claims against the estate. The fact that

appellants filed a proof of claim with the state court complaint attached thereto is mentioned as additional support for the district court's conclusion but is not identified as a fact that is necessary to its ruling. Viewed in this manner, *i.e.*, without comparison of the claims alleged in the Complaint and the claims asserted in the proof of claim, the district court's ruling supports Debtor's position. However, I find such a rule to be overbroad.

In *Steinman v. Spencer (In re Argus Group, Inc.)*, 206 B.R. 737, 747–48 (Bankr. E.D.Pa.1996),[10] *aff'd*, 206 B.R. 757 (E.D.Pa. 1997), I held that while the filing of a proof of claim in bankruptcy asserting the same claims raised against the debtor in a pre-petition state court action transforms the state court action into a core proceeding, the filing of a proof of claim asserting different claims than those asserted in pre-petition state court litigation *does not* convert the pre-petition litigation into a core proceeding. *Id.* at 748. *Cf. Grauman v. Smith (In re U.S. Physicians, Inc.)*, 2000 WL 1140294, at *1 (Bankr.E.D.Pa.2000) (observing that the law in the Third Circuit is that "only causes of action asserted by the estate which relate to the same claims as those described in a proof of claim are core.").

■ A corollary to this ruling is that when no proof of claim is filed, claims (or counterclaims) asserted against the debtor pre-petition are not transformed into core proceedings simply because the debtor files for bankruptcy and removes them.

Other courts have so held. *See Bevilacqua v. Bevilacqua*, 208 B.R. 11, 16–17 (E.D.N.Y.1997) (ruling that pre-petition state law action against debtor that was removed by debtor to federal court after she commenced bankruptcy was not a core proceeding under § 157(b)(2)(B) since plaintiff had not filed a proof of claim against the estate and, therefore, the adversary action would not "determine whether plaintiff [had] a claim against the estate"); *Banlavoura–I, Inc. v. McCarthy, Gyemant & Babbits (In re M, G & B, Inc.)*, 1996 WL 241703, at *3 & n. 6 (N.D.Cal. May 2, 1996) (holding that purely state law cause of action which was originally commenced against debtor in state court but which debtor subsequently removed to federal court after filing for bankruptcy was not a core proceeding since, *inter alia*, the plaintiff had not filed a proof of claim in the bankruptcy case); *Beneficial National Bank USA v. Best Receptions Systems, Inc. (In re Best Reception Systems, Inc.)*, 220 B.R. 932, 949–50 (Bankr.E.D.Tenn.1998) (concluding that where plaintiffs did not file proofs of claim in the debtor's bankruptcy case, pre-petition actions which were originally commenced in state court and subsequently removed to bankruptcy court were non-core proceedings that were related to the debtor's bankruptcy case); *Marshall v. Michigan Department of Agriculture (In re Marshall)*, 118 B.R. 954 (W.D.Mich. 1990) (adopting report and recommendations of bankruptcy judge) (discussed below). *See also Wood v. Wood (In re*

---

**10.** In *Steinman, supra,* the defendant filed a pre-petition lawsuit asserting purely state law claims against the debtors and non-debtor co-defendants in state court. After filing for bankruptcy, the debtors removed the state court litigation to the district court which referred it here. 206 B.R. at 740. The defendant subsequently filed a motion for remand. In opposing the motion for remand, the debtors argued that because the defendant filed

proofs of claim against their bankruptcy estates involving the same claims as the state court litigation, the removed action constituted a core proceeding. *Id.* at 747. Upon review, I concluded that the defendant's proofs of claims did not raise the same claims as the state court litigation and, consequently, that the filing of the proofs of claim did not transform the removed state court litigation into a core proceeding. 206 B.R. at 747–50.

*Wood)*, 825 F.2d 90, (5th Cir.1987) (ruling that adversary action which plaintiff filed against debtor and non-debtor co-defendant in bankruptcy court asserting state contract claim was not core proceeding under § 157(b)(2)(B) because the plaintiff had not filed a proof of claim against the estate); *NDEP Corporation v. Handl–It, Inc. (In re NDEP Corporation)*, 203 B.R. 905, 912 (D.Del.1996) (ruling that since defendant which asserted counterclaims in adversary proceeding initiated against it by debtor did not file a proof of claim, the resolution of the adversary proceeding was not part of the claims resolution process).

In *Marshall*, the debtor filed two related pre-petition state court suits against the defendant. In one of the suits, the defendant filed a counterclaim against the debtor. After filing for bankruptcy, the debtor removed the suits to the bankruptcy court and argued, *inter alia*, that they were core proceedings under § 157(b)(2)(B). Rejecting this argument, the bankruptcy court stated:

> Section 157(b)(2)(B), which states that core proceedings include "allowance or disallowances of claims against the estate," is inapplicable because the MDA has not filed a claim against the estate. A claim against the estate is initiated by the filing of a proof of claim as provided by Bankruptcy Rules 3001 and 3002; when a claim is filed special rules of bankruptcy are invoked and resolution of that claim is a core proceeding since it

can only arise in the context of bankruptcy. *See Wood v. Wood*, 825 F.2d 90, 97 (5th Cir.1987); *In re Republic Reader's Service, Inc.*, 81 B.R. 422, 429 (Bankr.S.D.Tex.1987). What [debtor] argues constitutes a core proceeding was not initiated by the [defendant] in the two adversary proceedings, but arose as a counterclaim to [debtor's] state law causes of action. We do not believe that [debtor] can turn his purely state law actions into a Section 157(b)(2)(B) "core proceeding" by simply removing these prepetition cases, along with the [defendant's] counterclaim, to this court.

118 B.R. at 959–60. I find this rationale persuasive and apply it here. Pinnacle has not filed a proof of claim against the estate.[11] In so stating, I recognize that a bar date has not been set, no request for one having been made by the Debtor. Thus, it is conceivable that a proof of claim may ultimately be filed.[12] Nonetheless, as none has been filed to date, the allowance or disallowance of a claim is not presented. Consequently, the instant adversary proceeding, despite the fact that it includes a counterclaim against the debtor, does not involve the "allowance or disallowance" of claims against the estate. Thus, it is not a core proceeding pursuant to § 157(b)(2)(B).

Having concluded that the "related to" test for jurisdiction is satisfied and rejected the Debtor's arguments that this mat-

---

11. While Pinnacle seeks to have this adversary proceeding remanded to State Court, it has not sought relief from the automatic stay to proceed with its Counterclaim against Debtor. *See Martin v. Myers (In re Martin)*, 1992 WL 144297, at *2 (Bankr.E.D.Pa. June 16, 1992) (noting that "while the automatic stay does not preclude the Debtors from prosecution of their claims and counterclaims against the Movants and the other Defendants

in these cases [referring to cases being remanded back to state court], it *does* prevent the Movants' prosecution of their affirmative claims and counterclaims against the Debtors in these cases.").

12. Pinnacle's failure to make a jury demand in this adversary case for fear of consenting to bankruptcy court jurisdiction, *see* page 396–97 *infra*, would appear to negate the likelihood of its filing a proof of claim which

ter constitutes a core proceeding, I hold that the third requirement for mandatory abstention is met. This adversary proceeding is "related to a case under Title 11."

### B. The Sixth Requirement

■ Debtor also contends that the sixth requirement for mandatory abstention, namely that the Action "can be timely adjudicated" in State Court, has not been met. Since Pinnacle is the party moving for abstention, it bears the burden on this issue. *Personette v. Kennedy (In re Midgard Corporation)*, 204 B.R. 764, 778 (10th Cir. BAP 1997). Pinnacle offered no testi-monial evidence on this issue. Rather, in seeking to satisfy its burden, Pinnacle cited to the following: (i) Rules 212.1, 212.1(d) and 262 of the Montgomery County Local Rules of Civil Procedure; and (ii) the State of Judiciary 2000 report by the President Judge of the State Court.[13]

Turning first to the Montgomery County Local Rules of Civil Procedure, Rule 212.1 provides that the "notice of first listing for trial, which is generated by the Court Administrator's Office at least 50 days prior to said trial date," constitutes notice of the earliest date on which the case may be tried.[14] Rule 212.1(d) sets forth the proce-

---

would be deemed a consent to this court's jurisdiction.

**13.** As further support for its contention that the Action can be timely adjudicated in State Court, Pinnacle cited to Rule 215 of the Pennsylvania Rules of Civil Procedure which states:

No case shall be assigned a preference on any trial list unless the right to preference is brought to the attention of the officer in charge of the list by praecipe, order or otherwise; and any party in interest may, at least ten days before the case is called for trial, make application to set aside such preference as may have been assigned.

Pa.R.Civ.P. 215. Notably, Rule 214, entitled "Preferences on Trial Lists," provides:

Preference shall be given in the preparation of trial lists to:
(a) Cases in which the Commonwealth is the real party in interest;
(b) Suits against defaulting officers of the Commonwealth or any political subdivision thereof or the sureties of such officers;
(c) Actions of quo warranto or mandamus involving public officers;
(d) Cases in which a new trial has been granted, a judgment of nonsuit removed ... or a *venire facias de novo* awarded, by either the court or original or appellate jurisdiction;
(e) Suits to recover wages due for manual labor;
(f) Cases arising under the laws of this Commonwealth to determine the competency of any person alleged to be weak-minded, insane or an habitual drunkard;
(g) Such other cases as the court upon cause shown may designate.

Pa.R.Civ.P. 214. Since the Action does not fit within subsections (a) through (f), it could only be given preference on the trial list by the court for "cause shown." Pinnacle has not cited any authority or provided any evidence that the State Court would consider the circumstances of this matter "cause" for giving the Action preference on the trial list. Consequently, Pinnacle's citation to Rule 215 fails to advance its position. Having so concluded, I nonetheless note that Debtor's reorganization case may present a basis to request a preference although I am unaware of how such an application would be received.

**14.** Rule 212.1 of the Montgomery County Local Rules of Civil Procedure states, in pertinent part:
(a) The Court hereby extends Pa.R.C.P. 212.1 and 212.2 to apply to civil actions to be tried non-jury and to equity actions. The notice of first listing for trial, generated by the Court Administrator's Office at least 50 days prior to said trial date, shall serve as notice of the earliest trial date required by Pa.R.C.P. 212.1(a).

Rule 212.1(a) of the Pennsylvania Rules of Civil Procedure provides, in relevant part:
In a civil action in which the damages sought exceed the jurisdictional limit for compulsory arbitration and which is to be tried by a jury, notice shall be given by the court of the earliest date on which the case may be tried. The notice shall be given at least thirty days before the plaintiff's pretrial statement is due to be filed.

Pa.R.Civ.P. 212.1(a).

dure for certifying that a case is ready for trial listing.[15] Under the rule, certification is made by "all parties" and must state that "no motions are outstanding and that all discovery has been completed." If an attorney refuses to join in the certification of the case, the counsel who wishes to have the case listed can request a conference with the designated judge with "five days' notice of that appointment to other counsel." If in the judge's opinion the case is ready for certification, he or she "may order the case listed." Lastly, Rule 262 states: "Cases shall be placed on the general trial list only upon a receipt of a praecipe for civil trial list certifying the readiness for trial or upon order of the Court." While these rules provide a procedure for getting a case to first listing, Pinnacle failed to offer any evidence regarding the application of these rules to this case. There was no evidence presented regarding the amount of time it can be expected to take the State Court to rule upon Pinnacle's preliminary objections, the amount of discovery which the parties intend to take and the likelihood that any discovery dispute between the parties would be resolved in State Court in a timely fashion. Since all motions must have been resolved and discovery completed before a case may be certified for trial, without the foregoing information, it is impossible to determine, based on these rules, when this case might be ready for first listing.

In the State Judiciary Report 2001, the President Judge of the State Court stated that: (i) as of June 30, 2000, there were 429 cases in the trial inventory; and (ii) the time from filing of a praecipe for trial to first listing is between 2 to 3 months. *See* Exhibit D to Motion. As the Debtor points out, this report does not state how often a case is actually tried on its first listing. The report also fails to offer any indication of the lapse of time between listings and how many times most cases are listed before they are tried. In short, the report, like the local rules which Pinnacle has cited, does not assist me in determining whether the Action could be timely adjudicated in State Court.

Therefore, Pinnacle has failed to satisfy the sixth requirement for mandatory abstention and thus, even though Pinnacle satisfied all of the other requirements, mandatory abstention does not apply. However, courts in this jurisdiction have repeatedly held that when most or, as here, all but one of the requirements for mandatory abstention are met, careful consideration should be given to whether it would be appropriate to exercise discretionary abstention under § 1334(c)(1). *See*

---

**15.** Rule 212.1(d) of the Montgomery County Local Rules of Civil Procedure and the President Judge's note thereto states:

(1) Certification shall be by all parties.
(2) Certification shall state that no motions are outstanding and that all discovery has been completed.
(3) No discovery shall be permitted after certification unless by agreement of counsel or permission of Court.
(4) If any attorney refuses to join in certification of the case, counsel who wishes the case listed shall request a conference with the designated Judge, and give five days' notice of that appointment to other counsel. Thereafter the Judge shall rule on whether the case is ready for listing and may order the case listed on motion of counsel if in the opinion of the Court the case is ready for certification.

**President Judge's note:** Local Rule 212.1*(d) Conferences—Members of the Bar are advised that the Board of Judges has agreed to discontinue the practice of ordering cases on the civil trial list where discovery has not been completed, and allowing for discovery to be ongoing. Delays in completing discovery may be addressed through traditional available mechanisms; .court orders, with sanctions for failure to comply.—President Judge A. Smyth, February 1998.

*Wolser v. Joshua Slocum, Ltd (In re Joshua Slocum, Ltd.)*, 109 B.R.101, 107 (E.D.Pa.1989) (adopting report and recommendations of bankruptcy judge); *Federal National Mortgage Association v. Rockafellow (In re Taylor)*, 115 B.R. 498, 502 (E.D.Pa.1990) (adopting report and recommendations of bankruptcy judge); *U.I.U. Health and Welfare Fund v. Levit (In re Futura Industries, Inc.)*, 69 B.R. 831, 834 (Bankr.E.D.Pa.1987).

## II. Discretionary Abstention

■■■■ Section 1334(c)(1) states:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). The decision whether to abstain under this provision is within the sound discretion of the bankruptcy judge. *In re Thaggard*, 180 B.R. 659, 663 (M.D.Ala.1995). In determining whether to exercise discretionary abstention, courts consider the following factors:

(1) the presence in the proceeding of nondebtor parties;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of the applicable law;

(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. S 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;

(10) the existence of a right to a jury trial;

(11) the burden on the bankruptcy court's docket; and

(12) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.

*In re Chicago, Milwaukee, St. Paul & Pacific Railroad Company*, 6 F.3d 1184, 1189 (7th Cir.1993); *Eastport Associates v. City of Los Angeles (In re Eastport Associates)*, 935 F.2d 1071 (9th Cir.1991). These factors are applied "flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *In re Chicago, Milwaukee, St. Paul & Pacific Railroad Company*, *supra*, 6 F.3d at 1189. I will apply the relevant factors from the aforementioned list to this case.

(1) *The presence in the proceeding of nondebtor parties.*

Debtor and Pinnacle are the sole parties to this proceeding. The presence of other nondebtor parties would weigh in favor of abstention. As there are none, this factor is neutral as applied here.

(2) & (3) *The extent to which state law issues predominate over bankruptcy issues and the difficulty or unsettled nature of the applicable law.*

Since the resolution of this proceeding will involve no bankruptcy law, state law issues predominate over bankruptcy issues. Moreover, Debtor admits that there are no difficult or unsettled issues of state

law. *See* Answer ¶ 42(b). Therefore, these factors weigh in favor of abstention.

(4) *The presence of a related proceeding commenced in state court or other non-bankruptcy court.*

No related proceeding has been commenced in state court or other nonbankruptcy court, but the Action was originally commenced in the State Court. This factor does not weigh heavily in favor of or against abstention.

(5) *The jurisdictional basis, if any, other than 28 U.S.C. S 1334.*

Debtor admits that there is no jurisdictional basis other than 28 U.S.C. § 1334. Answer ¶ 14(e). This factor weighs in favor of abstention.

(6) *The degree of relatedness or remoteness of the proceeding to the main bankruptcy case.*

Based upon the evidence in the record, the Action is closely related to the Debtor's bankruptcy case. While Asousa testified that the mortgage on the Facility was current as of the hearing date, he also testified that neither he nor his father had sufficient funds to continue satisfying the Debtor's obligations under the mortgage which was the reason the bankruptcy was filed. Furthermore, Asousa testified that Debtor intends to sell the Facility. A resolution of whether Debtor effectively terminated the Lease and is entitled to regain possession of the Facility from Pinnacle will impact Debtor's ability to sell the property and the price it will be able to obtain. *See* Answer ¶ 42(a). Consequently, this factor weighs against abstention.

(7) & (8) *The substance rather than form of an asserted "core" proceeding and the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.*

Not applicable.

(9) *The effect or lack thereof on the efficient administration of the estate if the Court abstains.*

If I abstain in this matter, it could have an effect on the administration of the Debtor's estate for the same reasons that I found the proceeding to be closely related to Debtor's bankruptcy case. Debtor does not have funds to satisfy its mortgage or other obligations on the Facility. Therefore, until and unless the proceeding is resolved in Debtor's favor, the monthly mortgage payments and other charges for the Facility may remain unpaid which affects the mortgagee and other parties to whom such monies are owed. Whether the mortgagee and other affected parties (*i.e.,* the entities to whom taxes are owed for the Facility) are adequately protected by an equity cushion or otherwise [16] cannot conclusively be determined on this record. No motion for relief from stay has been filed. Abstention could also affect the efficient administration of the estate because until the proceeding is resolved, Debtor will be hampered in its efforts to market the property which, in turn, will delay its reorganization.

This factor, while normally weighing in favor of bankruptcy adjudication, is mitigated here by the nature of this bankrupt-

16. In its Answer to Complaint, Pinnacle alleged that "additional rents, including November, 2000 rent are being held in escrow by counsel for Pinnacle[.]" Answer to Complaint ¶ 18. Consequently, Pinnacle may already be escrowing the payments which it is obligated to make under the terms of the Lease. Moreover, as noted above, Pennsylvania Business Bank holds a wraparound mortgage. Its debt is secured not only by the Facility but by the Office Condo, the mortgage on which is one payment away from being satisfied.

cy case. Other than Pennsylvania Business Bank and the two entities owed real estate taxes for the Facility which are first liens on the Facility, Debtor has only four secured creditors consisting of: (i) the mortgagees of the Office Condo and the Beach House; (ii) the Borough of Surf City which is owed only $483.00 on a sewer/water bill; and (iii) the West Chester ATCA School District which is owed $852.00 for real estate taxes on the Office Condo. As noted above, the Office Condo mortgage is one payment away from being satisfied, and the present seasonal rent from the Beach House exceeds the mortgage thereon. Significantly, the only unsecured creditor, excluding the principals and TCA which Asousa apparently controls, is the Westtown Business Center Association which is owed $2,810.00. Consequently, there are hardly any creditors of the estate other than the principals who will be affected by a delay in Debtor's reorganization. Thus, while this factor weighs against abstention, it is not a strong negative factor.

(10) *The existence of a right to a jury trial.*

Whether Pinnacle has a right to a jury trial is vigorously disputed by the parties. Rule 81(c) of the Federal Rules of Civil Procedure, which is made applicable hereto by Rule 9015 of the Federal Rules of Bankruptcy Procedure, applies to civil actions removed from state court to bankruptcy court. With regard to jury demands, Rule 81(c) provides, in pertinent part:

> If at the time of removal all necessary pleadings have been served, a party entitled to trial by jury under Rule 38 shall be accorded it, if the party's demand therefor is served within 10 days after the petition for removal is filed if the party is the petitioner, or if not the petitioner within 10 days after service on

the party of the notice of filing the petition. A party who, prior to removal, has made an express demand for trial by jury in accordance with state law, need not make a demand after removal. If state law applicable in the court from which the case is removed does not require the parties to make express demands in order to claim trial by jury, they need not make demands after removal unless the court directs that they do so within a specified time if they desire to claim trial by jury. The court may make this direction on its own motion and shall do so as a matter of course at the request of any party. The failure of a party to make demand as directed constitutes a waiver by that party of trial by jury.

Fed.R.Civ.P. 81(c). Three specific situations are addressed by this passage from the rule. The first situation is implicated if, at the time of removal, "all necessary pleadings have been served." In such cases, a demand for a jury trial must be made "within 10 days after the petition for removal is filed if the party is the petitioner, or if not the petitioner within 10 days after service on the party of the notice of filing the petition." The second situation arises when the party seeking a jury trial made an express demand for the same in accordance with state law prior to removal. Neither party contends that this situation is applicable here. The third situation exists when the state law applicable in the court from which the action was removed "does not require the parties to make express demands in order to claim trial by jury." In such cases, the parties need not make a demand for trial by jury after removal unless ordered to do so by the court.

Pinnacle contends that it is governed by the rule relating to the third situation described above. Relying upon Rule

1007.1(a) of the Pennsylvania Rules of Civil Procedure, Pinnacle reasons that because the pleadings in State Court were not yet closed, there was no applicable state law at the time of removal mandating that a jury demand be made.

Rule 1007.1(a) provides:

> In any action in which the right to jury trial exists, that right shall be deemed waived unless a party files and serves a written demand for a jury trial not later than twenty days *after service of the last permissible pleading.* The demand shall be made by endorsement on the pleading or by a separate writing.

Pa.R.Civ.P. 1007.1(a) (emphasis added). Rule 1017 of the Pennsylvania Rules of Civil Procedure lists the pleadings allowed in Pennsylvania's state courts. This rule states, in pertinent part:

> [T]he pleadings in an action are limited to a complaint, an answer thereto, a reply if the answer contains new matter or a counterclaim, a counter-reply if the reply to a counterclaim contains new matter, a preliminary objection and an answer thereto.

Pa.R.Civ.P. 1017. Pursuant to this rule, the pleadings in the Action in State Court were not yet closed because after the State Court ruled upon Pinnacle's preliminary objections, Pinnacle would have been entitled to file a counter-reply since Debtor's reply to Pinnacle's Counterclaim contained new matter. Accordingly, Pinnacle is correct that under applicable state law, it had not yet been required to file a demand for a jury trial. However, it is also clear from Pa.R.Civ.P. 1007.1(a) that unless Pinnacle made a jury demand "not later than twenty days after the last permissible pleading," it would waive the right to a jury trial in State Court. Consequently, Pinnacle was required under applicable state law to make an express demand for a jury trial in order to claim it.

Pinnacle would have me interpret the third situation described in the passage quoted above from Rule 81(c) as applying when state law applicable in the court from which the case is removed has not *yet* required parties to make an express demand in order to claim trial by jury. The implication of that construction in each case removed to federal court before the state court demand deadline would be the elimination of any deadline absent the entry of an order by the federal court establishing one notwithstanding the fact that a deadline does exist in state court. That position has been advanced and rejected by other federal courts. In *Williams v. Shell Oil Company,* 487 F.Supp. 81, 84 (E.D.Mich.1980), the Court responded to Debtor's argument as follows:

> The provision [relied upon by Debtor in Rule 81(c)] is of limited applicability, and was intended to avoid inadvertent waivers of jury trials where state law requires no express demand be made at all. The provision is applicable
>
> > Only if the case automatically would have been set for jury trial In the court from which it was removed without the necessity of any action on the part of the party desiring jury trial. 9 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure, § 2319, Vol. 9 at 90 (1971).
>
> The provision is not applicable in situations in which an express demand is required by state law, even if under state law the deadline for filing the demand would fall at some point after the petition for removal was filed. In other words, Rule 81(c) does not guarantee a right to jury trial in every situation in which a party has not waived the right in state court prior to removal. [Citations omitted.]

*See also Wysowski v. Sitmar Cruises,* 127 F.R.D. 446, 447–48 (D.Conn.1989) (concluding that the third situation described in Rule 81(c) for jury demands was inapplicable to action which was removed before answer was filed even though time limit for making jury demand under Connecticut law had not yet expired because "Connecticut law does require the parties to expressly claim trial by jury"); *Bonney v. Canadian National Railway Company,* 100 F.R.D. 388, 392 (D.Maine 1983) (where applicable state law required a jury demand to be made in the pretrial memorandum, third Rule 81(c) situation did not apply even though action was removed before an answer to the complaint was even filed).[17] In accordance with the express language of Rule 81(c), the third situation thus applies only when "state law applicable in the court from which the case is removed does not require parties to make express demands in order to claim trial by jury." Since, as I noted above, Pinnacle was required under applicable state law to make an express demand for a jury trial in order to claim it, the third situation does not apply here. The parties agreeing that the second situation does not apply, I turn to the first situation set forth in Rule 81(c) to determine if it governs here.

Rule 7(a) of the Federal Rules of Civil Procedure identifies the pleadings allowed in bankruptcy court.[18] This rule provides:

There shall be a complaint and an answer; a reply to a counterclaim denominated as such, an answer to a crossclaim, if the answer contains a crossclaim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

Fed.R.Civ.P. 7(a). Applying Rule 7(a) to the instant proceeding, at the time of removal "all necessary pleadings had been served" in the now federal action since Debtor had filed a reply to Pinnacle's Counterclaim and federal law, unlike Pennsylvania law, does not allow a counter-reply to a counterclaim containing new matter. Consequently, Rule 81(c) required Pinnacle to make its demand for a jury trial within ten days after service on it of the Notice of Removal. As it failed to do so, it has waived its right to a jury trial in federal court.

In light of the foregoing, I am confronted with the following aberration. Pinnacle failed to comply with the time frame for filing a demand for a jury trial in this court. However, if I grant the Motion and remand the Action to State Court, Pinnacle's right to a jury trial would be preserved since the time frame for asserting that right has not expired in State Court where the pleadings are not closed. According to the united States Supreme Court in *Jacob v. City of New York,* 315 U.S. 752, 752–53, 62 S.Ct. 854, 86 L.Ed. 1166 (1942):

**17.** There are decisions from the Second Circuit concluding that, because New York law does not impose a time limitation on when a jury demand must be made, cases from New York fall into a "gray area" or "gray situation" not covered by Rule 81(c). *See e.g., Cascone v. Ortho Pharmaceutical Corporation,* 702 F.2d 389, 391 (2d Cir.1983); *TSI Energy, Inc. v. Stewart and Stevenson Operations, Inc.,* 1998 WL 903629, at *6 (N.D.N.Y. Dec.23, 1998); *Thompson v. Beth Israel Medical Center,* 1998 WL 689937, at *2 (S.D.N.Y. Oct.2, 1998). These cases are irrelevant here since Pennsylvania law imposes a time limit on making jury trial demands.

**18.** Fed.R.Civ.P. 7 is applicable hereto pursuant to Fed.R.Bankr.P. 7007.

The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts.

Given the significance of the right to trial by jury, its loss by my retention of this case weighs heavily in favor of abstention.

I note that even if I denied the Motion and the proceeding remained in this Court, Pinnacle could file a motion under Fed. R.Civ.P. 39(b)[19] requesting a jury trial despite its failure to file a timely demand for the same.[20] *See Sun Company, Inc. v. Carboline Company*, 1992 WL 252267, at *1 (E.D.Pa. Sept.28, 1992) ("Federal Rule of Civil Procedure 39(b) grants the Court discretion to order a jury trial in situations where the right exists but a party has failed to make a timely demand."). While my ruling on such a motion would obviously depend upon the showing which Pinnacle made in support of its request and Debtor's objections to the request,[21] my inclination, assuming such a request were promptly made, would be to grant it. Debtor has been on notice since Pinnacle filed its Motion on March 23, 2001, which was within 20 days of when a timely jury demand had to be asserted, that it wants a jury trial in this matter. Moreover, as of the hearing on the Motion, no discovery had been taken by either party in this case. Under such circumstances, it would be difficult for Debtor to show that it would suffer prejudice if a jury trial was allowed.[22] Furthermore, at the hearing on the Motion, Pinnacle explained its reason for refraining from making a timely jury demand in this Court, namely that it did

**19.** Rule 39(b) states:

Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by jury of any or all issues.

Fed.R.Civ.P. 39(b).

**20.** In its memorandum of law in support of its Motion, Pinnacle indicated its intent to seek a jury trial in this Court should it be forced to litigate here. *See* Brief of Pinnacle Foods, Inc. in Support of Motion to Expedite Abstention and to Remand at 7–8 (asserting a request to make a demand for a jury trial *nunc pro tunc* should this litigation remain in this Court). Pursuant to Fed.R.Civ.P. 39(b), a request for leave to make a jury demand *nunc pro tunc* must be made by "motion." *See* Fed.R.Civ.P. 39(b) ("notwithstanding the failure of a party to demand a jury ... the court in its discretion upon motion may order a trial by jury[.]"). *See also Darby v. Allstate Insurance Company*, 1995 WL 568481, at *1 (S.D.Cal. September 5, 1995) ("Rule 39(b) by its express terms requires that [the party seek-

ing the jury trial] make a motion for relief, which he has not done.").

**21.** In determining whether to grant an untimely jury demand, courts consider the following factors: (1) whether the issues are suitable for a jury; (2) whether granting the motion would disrupt the schedule of the Court or the adverse party; (3) whether any prejudice would result to the adverse party; (4) how long the party delayed in bringing the motion; and (5) the reasons for the failure to file a timely demand. *United States Securities and Exchange Commission v. The Infinity Group Company*, 212 F.3d 180 (3d Cir.2000), cert. denied, —— U.S. ——, 121 S.Ct. 1228, 149 L.Ed.2d 138 (2001).

**22.** Indeed, had this proceeding not been removed from State Court, it is highly unlikely that Pinnacle would have been required to assert its demand for a jury trial much sooner than March 23, 2001 when it filed its Motion here since, at the time of removal, the State Court had not yet ruled on Pinnacle's Preliminary Objections. *See* Pa.R.Civ.P. 1028(d) (when preliminary objections are overruled, objecting party has right to plead over within twenty days after notice of the order).

not want to take any steps that could be interpreted as submitting to the jurisdiction of the bankruptcy court. While there is case law holding that the filing of a demand for a jury trial does not constitute a waiver of the right to remand, there is also authority which supports the contrary view. *Compare Benjamin v. Natural Gas Pipeline Company of America (In re Benjamin),* 793 F.Supp. 729, 732 (S.D.Tex. 1992) (reasoning that since under federal law jury demands will often have to be filed before remand motions, "it would be ludicrous to conclude that the filing of a jury demand before a remand motion constitutes ... a waiver of the right to remand an improperly removed case."); *Student A v. Metcho,* 710 F.Supp. 267, 269 (N.D.Cal.1989) (since demand for jury trial must be made pursuant to Fed.R.Civ.P. 81(c) within 10 days after removal, "[t]here is no sense in treating the filing of a jury demand as a waiver of the right to remand."), *with Intercoastal Refining Company, Inc. v. Jalil,* 487 F.Supp. 606, 608 (S.D.Tex.1980) ("The filing of a jury demand in federal court prior to insisting upon the right to remand has been held to be the type of affirmative conduct on the part of a plaintiff that constitutes a waiver of the right to remand an action for failure to strictly comply with removal procedures."). Thus, the issue of whether a party waives the right to remand by filing a jury demand is not clear-cut and Pinnacle cannot be faulted for acting cautiously.[23] Consequently, Pinnacle's reason for failing to assert a timely jury demand appears reasonable.

In the event Pinnacle were granted leave to make an untimely demand for a jury trial, this proceeding would in all likelihood be tried in the district court and not

here since there is no indication that Pinnacle would consent to a jury trial here. In *Computerware, Inc. v. Micro Design, Inc. (In re Micro Design, Inc.),* 120 B.R. 363, 368 (E.D.Pa.1990) (adopting report and recommendation of bankruptcy judge), the Court stated:

> If the matter must be heard in a forum other than this bankruptcy court, it makes little practical difference what forum hears it, and we may as well send it back to the state court as serve as a stepping-stone for a proceeding to find its way to district court.

I concur. The pendency of this bankruptcy should not be the mechanism to convert an essentially two party landlord-tenant dispute into a federal case. Moreover, the benefit to bankruptcy court management of the litigation to support the pending reorganization is absent if the Action proceeds in the district court. These circumstances reinforce my conclusion that Pinnacle's right to a jury trial weighs strongly in favor of abstention.

(11) *The burden on the bankruptcy court's docket.*

While the resolution of this proceeding does not involve bankruptcy issues but predominately state law issues with which the State Court is more familiar, it would not be a burden for this Court to litigate this matter since a resolution of the Action would advance the issue of whether the Debtor will be able to reorganize. However, the burden on my docket may be immaterial since even if I deny the Motion, it is unlikely that this matter would be tried in the bankruptcy court. The burden on the district court docket, however, is another matter if state law cases could be so easily transferred into federal cases. Conse-

---

**23.** The "better procedure" for Pinnacle may have been to file a jury demand with "a statement that their request was not to be considered as a waiver of the right to [remand]." *Owens v. General Dynamics Corp.,* 686 F.Supp. 827, 830 (S.D.Cal.1988).

quently, this factor may weigh in favor of abstention.

(12) *The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.*

Based on the evidence in the record, I find that it is unlikely that Debtor was forum shopping when it removed the Action to this court. Asousa testified that when he commenced the Action in State Court, he believed the Debtor would be able to survive until the litigation was resolved by relying upon TCA's income and his father's equity investments. However, shortly thereafter, TCA's business deteriorated and the value of his father's investments in the stock market decreased. Asousa realized that Debtor needed to file for bankruptcy protection because there was no money to pay its bills. I find this testimony credible. While Asousa could not state how much his father's stock investments had decreased, it is apparent from his testimony that Debtor is in bankruptcy because it could not with its own money pay its obligations as they became due. *Compare Steinman v. Spencer (In re Argus Group 1700 Inc. & In re Arden Phoenix Group 1700, L.P.), supra,* 206 B.R. at 752 (concluding that debtors' financial condition did not force them to file for bankruptcy and that debtors filed for bankruptcy in order to obtain another forum other than state court in which to litigate). Therefore, this factor neither weighs in favor or against abstention.

Having determined that only one of the requirements for mandatory abstention is not met, I have given careful consideration to whether it would be appropriate to exercise discretionary abstention under 28 U.S.C. § 1334(c)(1). Applying all of the factors relevant to determining whether to exercise discretionary abstention and focusing upon the particular circumstances of this case, I conclude that discretionary abstention is appropriate under 28 U.S.C. § 1334(c)(1) and will, therefore, remand this case back to the State Court under 28 U.S.C. § 1452(b).

An Order consistent with this Opinion shall issue.

## ORDER

**AND NOW,** this 2nd day of July 2001, upon consideration of Defendant Pinnacle Foods, Inc.'s Motion to Exercise Abstention and to Remand ("Motion") and after a hearing with notice, and for the reasons set forth in the accompanying Opinion;

It is hereby **ORDERED** and **DECREED** that the Motion is **GRANTED**. The Clerk is directed to transmit this adversary proceeding back to the Court of Common Pleas of Montgomery County.