**In re ASOUSA PARTNERSHIP, Debtor.**

**Asousa Partnership, Plaintiff,**

**v.**

**Pinnacle Foods, Inc., Defendant.**

**Bankruptcy No. 01–12295DWS. Adversary No. 01–0974.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 26, 2002.

Steven M. Coren, Eric L. Frank, Philadelphia, PA, for debtor.

John A. Gallagher, Norristown, PA, Judith T. Romano, Philadelphia, PA, John D. Schlotter, Roswell, GA, for creditor.

## *OPINION*

DIANE WEISS SIGMUND,
Bankruptcy Judge.

Before the Court is the motion ("Motion") of defendant, Pinnacle Foods, Inc. ("Pinnacle"), to dismiss the complaint ("Adversary Complaint") filed by plaintiff/debtor, Asousa Partnership ("Debtor"), or, alternatively, for an order pursuant to 28 U.S.C. § 1334(c)(1) abstaining from the adjudication of such complaint. At the hearing on the motion, both parties presented oral argument and the matter was taken under advisement. Upon consideration, the Motion shall be denied.

## BACKGROUND

Debtor is a partnership comprised of two partners, namely Theodore C. Asousa, Jr. ("Asousa") and his father, Theodore C. Asousa. *Asousa Partnership v. Pinnacle Foods, Inc. (In re Asousa Partnership)*, 264 B.R. 376, 378–79 (Bankr.E.D.Pa.2001) (hereinafter referred to as *"Asousa I"*). Debtor owns three properties, including a USDA approved manufacturing facility (the "Facility") located in Pottstown, Pennsylvania which is the subject of the Adversary Complaint. *Id.* at 379. Debtor purchased the Facility on July 29, 1999 for $720,000 plus closing costs. *Id.* The mortgagee on the property, Pennsylvania Business Bank, was given a wraparound mortgage on all of the Debtor's properties. *Id.* Initially, Debtor leased the Facility to Camelot Foods, but it failed to pay rent and went out of business. *Id.* On or about May 1, 2000, Plaintiff entered into a lease (the "Lease") for the Facility with Pinnacle. *Id.* While Pinnacle's monthly rent of $7,511.69 is equal to the monthly mortgage on the Facility, Pinnacle is also responsible for payment of all taxes on the property. *Id.*

In October, 2000, Pinnacle failed to make its rental payment when due. *Id.* While it eventually paid rent for that month, it ceased paying rent the following month. *Id.*

### A. State Court Action

On or about November 13, 2000, Debtor commenced an action (the "State Court Action") against Pinnacle in the Court of Common Pleas of Montgomery County ("State Court") by filing a two-count complaint ("State Complaint"). *Id.* In the State Complaint, Debtor alleges that Pinnacle defaulted on its rent payments under the Lease and, consequently, that Debtor terminated the Lease as of November 7, 2000. *Id.* In Count I, Debtor seeks to have Pinnacle ejected from the Facility. *Id.* In Count II, Debtor seeks rent and other monetary damages which it claims are due and owing under the Lease. *Id.*

Pinnacle filed an answer to the State Complaint with new matter and a counterclaim ("State Counterclaim"). *Id.* In Count I of the State Counterclaim, Pinnacle alleges that Debtor breached the Lease by failing to deliver the Facility in a usable condition, failing to make improvements and repairs thereto as required by the Lease and failing to abate rent otherwise owed by Pinnacle in recognition of the labor costs and expenses which it incurred in removing debris, rubbish and equipment from the Facility after Debtor wrongly refused to do so. *Id.* at 379–380. Pinnacle contends that it is entitled to specific performance of the lease and/or a rent abatement. *Id.* at 380. In Count II, Pinnacle alleges that capital improvements and repairs which it made to the Facility sub-

stantially increased its value and that it is entitled to restitution for the value of such improvements and repairs. *Id.*

On December 29, 2000, Debtor filed a Reply to New Matter and an Answer with New Matter to Pinnacle's State Counterclaim. *Id.* Shortly thereafter, Pinnacle filed preliminary objections ("Preliminary Objections") to Debtor's new matter to Pinnacle's State Counterclaim; Debtor subsequently answered the Preliminary Objections. *Id.*

Less than a month later, on February 20, 2001, Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. *Id.* The next day, Debtor filed a Notice of Removal of the State Court Action, claiming the right to remove under 28 U.S.C. § 1334(b) and 28 U.S.C. § 1452. *Id.*

Thirty days later, on March 23, 2001, Pinnacle filed a motion ("First Motion") seeking mandatory or discretionary abstention and remand of the State Court Action. *Id.* On July 2, 2001, I issued an Order ("July 2 Order") granting the First Motion and remanding the State Court Action, finding that while the requirements of mandatory abstention had not been meant, discretionary abstention was appropriate. *Id.* at 381–398. Debtor did not appeal the July 2 Order.

Thereafter, pursuant to Debtor's request, I issued an order establishing August 24, 2001 as the bar date for filing proofs of claim. Motion ¶¶ 20–21.[1] On August 24, 2001, Pinnacle filed its Proof of Claim in the amount of $522,598.17.[2] *Id.* ¶ 22. According to Pinnacle, its Proof of Claim arises "exclusively out of the facts set forth" in its State Counterclaim. Motion ¶ 24. *See also* Exhibit "A" (Proof of Claim) to Motion. Pinnacle also submitted an addendum to its Proof of Claim stating:

> This Proof of Claim is being submitted in compliance with the Order of this Court dated July 12, 2001 establishing a bar date and does not constitute a waiver of Claimant's rights as established by this Court's opinion and Order dated July 2, 2001 and do not by their filing of the Proof of Claim intend to submit to the jurisdiction of this Court other than for purposes of preserving their claim.

Exhibit A (Proof of Claim) to Motion.

On September 21, 2001, Debtor filed an objection to Pinnacle's Proof of Claim, asserting that Debtor did not breach the Lease. Four days later, on September 25, 2001, Debtor commenced the instant adversary proceeding by filing the Adversary Complaint which sets forth three claims. In paragraph 1 of the Complaint, Debtor alleges:

> This is an adversary proceeding in which Debtor ... objects to the proof of claim filed by Defendant Pinnacle ... In this adversary proceeding, the Debtor seeks disallowance of Pinnacle's claim. In addition, the Debtor counterclaims and seeks a money judgment against Pinnacle based on Pinnacle's breach of real property lease between the Debtor and

---

**1.** Debtor admitted the allegations contained in paragraphs 20–23 and 30 of the Motion. *See* Plaintiff–Debtor's Answer to Defendant Pinnacle Foods, Inc.'s Motion to Dismiss Complaint and/or Seeking Discretionary Abstention ("Answer to Motion") ¶¶ 20–23, 30.

**2.** A breakdown of the components included in the $522,598.17 was provided as Exhibit "A" to the Proof of Claim. This breakdown states:

| | | |
|---|---|---|
| (a) Removal of debris | | $ 3,118.80 |
| (b) Storage of abandoned equipment | | |
| | Volpe Express | $ 3,916.58 |
| | National Trailer | $ 1,526.40 |
| (c) Repairs and/or leasehold | | |
| | improvements | $383,036.39 |
| (d) Liquid Nitrogen Tank | | $116,000.00 |
| (e) Labor—removal of abandoned | | |
| | equipment left in/on leasehold | $ 15,000.00 |
| | TOTAL PRE–PETITION CLAIM | $522,598.17 |

*See* Exhibit A (Proof of Claim) to Motion.

Pinnacle and possession of the real property which is the subject of the lease between Debtor and Pinnacle.

Adversary Complaint ¶ 1. In Count I of the Adversary Complaint, Debtor restates its objection to the Proof of Claim. In Count II, Debtor asserts that it is entitled to possession of the Facility, contending that the Lease was terminated on November 7, 2000 as a result of Pinnacle's non-payment of rent. In Count III, Debtor contends that it is entitled to monetary damages for Pinnacle's breach of the Lease, including its failure to pay rent and retention of the Facility after termination of the Lease.

On October 17, 2001, Pinnacle filed a demand for a jury trial in the State Court Action. Motion ¶ 30.[3] Approximately one month later on November 19, 2001, Pinnacle filed its Motion seeking to have the Adversary Complaint dismissed or, in the alternative, for discretionary abstention.

# DISCUSSION

## I. Motion to Dismiss

While Pinnacle seeks the dismissal of Count I of the Adversary Complaint on the ground that it is duplicative of the Debtor's Objection,[4] the major thrust of Pinnacle's motion is that Counts II and III should be dismissed so that these claims may be tried by a jury in the State Court Action where Debtor originally filed them.[5] Citing to 28 U.S.C. § 157(b)(2)(C), Pinnacle states that it "recognizes that, in ordinary circumstances, a counterclaim filed by a debtor in response to a proof of claim constitutes a core proceeding."[6] Nevertheless, Pinnacle contends that the circumstances of the instant matter warrant a different result. To this end, Pinnacle asserts: "[A] number of bankruptcy courts have employed their equitable powers and held that the compulsory or defensive filing of a claim in the bankruptcy court does not create inviolable bankruptcy court jurisdiction over the claim." Pinnacle's Brief at 9.

3. As I noted above, Debtor admitted the allegation set forth in paragraph 30 of the Motion. *See supra* n. 1.

4. It is irrelevant that Debtor chose to assert the counterclaims set forth in Counts II and III of the Adversary Complaint by filing an adversary proceeding rather than including them in its objection to Pinnacle's proof of claim. If it had done the latter, the objection would have become an adversary proceeding pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure.

5. Pinnacle also asserts that, since I granted its First Motion and abstained from deciding the State Court Action, the "law of the case" doctrine prevents Debtor from obtaining reconsideration of that decision. Memorandum of Law in Support of Motion to Dismiss Complaint and/or Seeking Discretionary Abstention of Pinnacle Foods, Inc. ("Pinnacle's Brief") at 7–9. While Pinnacle properly states the law of the case doctrine, it is not implicated here. With Pinnacle's filing of its Proof of Claim and Debtor's filing of the Ad-

versary Complaint, I am not reconsidering my prior decision but deciding new issues which have not been addressed before.

6. Section 157(b)(2)(C) provides:

> Core proceedings include, but are not limited to ... counterclaims by the estate against persons filing claims against the estate.

28 U.S.C. § 157(b)(2)(C). By citing to this section as authority for the proposition that in "ordinary circumstances, a counterclaim filed by a debtor in response to a proof of claim constitutes a core proceeding" Pinnacle seems to equate a finding of "core jurisdiction" with the conclusion that Pinnacle would have no right to trial by jury on the counterclaims. However, in *Granfinanciera v. Nordberg*, 492 U.S. 33, 61, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), which is discussed in Part I(A) of this Opinion, the Supreme Court explained that a litigant may not be deprived of a trial by jury in an action simply because the action has been designated a "core" proceeding under § 157(b)(2).

Opposing the Motion, Debtor contends that Pinnacle's argument that this Court should employ its equitable powers to hold that Pinnacle did not consent to the jurisdiction of this Court by filing the Proof of Claim is "inconsistent" with Third Circuit case law as well as the Supreme Court decisions on which the Circuit Court relied. Debtor further asserts that the claims contained in the Adversary Complaint constitute core proceedings because "there is one transaction or occurrence that is at issue in this proceeding: whether the Debtor breached the Lease (as asserted in Pinnacle's Proof of Claim) or whether Pinnacle breached the Lease (as asserted in the Debtor's Complaint)." Plaintiff–Debtor's Memorandum of Law in Opposition to Defendant Pinnacle Food, Inc.'s Motion to Dismiss Complaint and/or Seeking Discretionary Abstention ("Debtor's Brief") at 8. According to Debtor, its claims in Counts II and III of the Adversary Complaint are "actually no more than additional forms of relief to which [it] will be entitled if it prevails in its objection to Pinnacle's Proof of Claim." *Id.* at 9.

### A.

In resolving the issue raised in this matter, namely whether by filing a proof of claim Pinnacle has submitted to the equitable jurisdiction of the bankruptcy court to decide counterclaims filed against it, certain seminal Supreme Court and Third Circuit cases inform my analysis. In *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), the Supreme Court held that a bankruptcy referee had summary jurisdiction to adjudicate a trust-

ee's assertion of a voidable preference against a creditor if it had filed a proof of claim against the estate. In so ruling, the Supreme Court held that by reason of § 57(g) of the Bankruptcy Act,[7] the preference claim was part of the claims allowance process. It reasoned as follows:

> Unavoidably and by the very terms of the Act, when a bankruptcy trustee presents a § 57, sub. g objection to a claim, the claim can neither be allowed nor disallowed until the preference matter is adjudicated. The objection under § 57, sub. g is, like other objections, part and parcel of the allowance process and is subject to summary adjudication by a bankruptcy court.

*Id.* at 330, 86 S.Ct. 467. Discussing the summary jurisdiction of the bankruptcy court and its effect on a creditor's right to a jury trial on objections to claims, the Supreme Court stated:

> The Bankruptcy Act … converts the creditor's legal claim into an equitable claim to a pro rata share of the res, a share which can neither be determined nor allowed until the creditor disgorges the alleged voidable preference he has already received. As bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession, and as the proceedings of the bankruptcy court are inherently proceedings in equity, there is no Seventh Amendment right to a jury trial for determination of objections to claims, including § 57, sub g. objections.

---

7. The substance of this provision was carried forward under the Bankruptcy Code in § 502(d). *See Committee of Unsecured Creditors v. Commodity Credit Corporation (In re KF Dairies, Inc.),* 143 B.R. 734, 735 (9th Cir. BAP 1992); *United States Lines, Inc. v. United States (In re McLean Industries, Inc.),* 184 B.R. 10, 16 (Bankr.S.D.N.Y.1995); *In re America's Shopping Channel, Inc.,* 110 B.R. 5, 8 (Bankr.S.D.Cal.1990); *Stober v. Steelinter USA, Inc.,* 108 B.R. 799, 802 (Bankr.M.D.Fla. 1989); *In re Mid Atlantic Fund, Inc.,* 60 B.R. 604, 609–10 (Bankr.S.D.N.Y.1986).

*Id.* at 336–37, 86 S.Ct. 467 (citations omitted). The Supreme Court also concluded that, in light of the principles of *res judicata*, the bankruptcy court has authority to adjudicate an objection to a claim even if the objection seeks affirmative relief, declaring:

> [A] creditor who offers a proof of claim and demands its allowance is bound by what is judicially determined, and if his claim is rejected, its validity may not be relitigated in another proceeding on the claim. The Courts of Appeal have uniformly applied these principles to hold that a bankruptcy court's resolution of a § 57, sub. g objection is *res judicata* in a subsequent action by the trustee under § 60 to recover the preference. To require the trustee to commence a plenary action in such circumstances would be a meaningless gesture, and it is well within the equitable powers of the bankruptcy court to order return of the preference during the summary proceedings on allowance and disallowance of claims.

\* \* \* \* \* \*

[I]t makes no difference, so far as the petitioner's Seventh Amendment claim is concerned, whether the bankruptcy trustee urges only a § 57, sub g. objection or also seeks affirmative relief. In practical effect, the denial of a jury trial would be no less were the bankruptcy court merely to determine the existence and amount of the preference, since that determination would be entitled to *res judicata* effect in any subsequent plenary action. And we have held that equity courts have power to decree complete relief and for that purpose may accord what would otherwise be legal remedies.

*Id.* at 337–38, 86 S.Ct. 467.[8] In footnote 1, the Supreme Court recognized that several courts of appeals, including the Third Circuit Court of Appeals in *In re Solar Manufacturing Corp.*, 200 F.2d 327 (3d Cir. 1952), had upheld the summary jurisdiction of the referee over counterclaims arising out of the same transaction as the creditor's claim drawing the jurisdictional line at permissive counterclaims arising out of distinct transactions.[9] However, it

---

**8.** In a footnote, the Supreme Court specifically noted the limit of its ruling regarding a referee's or bankruptcy court's jurisdiction to award affirmative relief as part of the claims allowance process, stating: "[W]e obviously intimate no opinion concerning whether the referee has summary jurisdiction to adjudicate a demand by the trustee for affirmative relief, all of the substantial factual and legal bases for which have *not* been disposed of in passing on objections to the claim." 382 U.S. at 332 n. 9, 86 S.Ct. 467 (emphasis added).

**9.** In *In re Solar Manufacturing Corp., supra,* the Third Circuit affirmed the district court's ruling that it had summary jurisdiction to determine counterclaims filed by a bankruptcy trustee to proofs of claim filed by a creditor where the counterclaims and claims arose out of the same transaction. In *Dwyer v. Franklin (In re Majestic Radio and Television Corp.),* 227 F.2d 152 (7th Cir.1955), the Seventh Circuit explained the rationale behind the principle that "filing a proof of claim in a Bank-

ruptcy Court constitutes consent to be sued in that court on counterclaims arising out of the same transaction[,]" stating:

> A litigant could hardly claim a recovery on the basis of a certain fact situation without permitting the court to decide all of the legal consequences of that situation. No party can invite summary adjudication on only part of the relevant evidence relating to the subject matter of the claim. If all of such evidence shows that each party is liable to the other the court will set off one claim against the other and render judgment for only any balance found to be due. In other words, if you invite a Bankruptcy Court to review a set of facts for your benefit, you invite it to review all pertinent related facts even though they should tend to prove your opponent's case.

*Id.* at 156. In *Peters v. Lines,* 275 F.2d 919 (9th Cir.1960), the Ninth Circuit observed that five circuits, namely the Second, Third, Fourth, Eighth and Tenth Circuits, "are of the view that the filing of a claim is an implied

appeared to limit the scope of its decision, stating:

> The decision presently under review upholds summary jurisdiction to order return of a preference whether or not the preference relates to the same transaction as the claim but declines to extend such jurisdiction to unrelated counterclaims not involving a preference, setoff, voidable lien, or a fraudulent transfer.

86 S.Ct. at 470 n. 1. Interestingly, while this footnote indicates that the Supreme Court's holding in *Katchen* was limited to preference actions whether or not related to the same transaction as the creditor's claim, in a subsequent decision not involving a bankruptcy matter, the Supreme Court commented upon its holding in *Katchen* and seemed to interpret it more broadly. In *Commodity Futures Trading Commission*, 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986), which involved the jurisdiction of the Commodity Futures Trading Commission, the Supreme Court stated

> [I]n *Katchen v. Landy*, ... this Court upheld a bankruptcy referee's power to hear and decide state law counterclaims against a creditor who filed a claim in bankruptcy *when those counterclaims arose out of the same transaction.* We reasoned that, as a practical matter, requiring the trustee to commence a plenary action to recover on its counterclaim would be a "meaningless gesture."

478 U.S. at 852, 106 S.Ct. 3245 (emphasis added). *See Northern Pipeline Construction Co. v. Marathon Pipe Line Company,* 458 U.S. 50, 97 n. 4, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (White, J., dissenting) (Berger, C.J. and Powell, J. joining) ("In *Katchen v. Landy*, ... we recognized that when a creditor files a claim, the referee is empowered to hear and decide a counterclaim against the creditor arising out of the same transaction."). *See also Sun West Distributors, Inc. v. Grumman Energy Systems Company (In re Sun West Distributors, Inc.),* 69 B.R. 861, 865 (Bankr.S.D.Cal.1987) (noting that *Commodity Futures Trading Commission v. Schor, supra,* "expands the jurisdiction by consent concept of *Katchen v. Landy*").

Following *Katchen,* the Third Circuit issued *In re Carnell Construction,* 424 F.2d 296 (3d Cir.1970). In this case, the Third Circuit relied upon *In re Solar Mfg. Corp.* in ruling that "a Bankruptcy Court does not have jurisdiction over a counterclaim interposed by a Receiver which is unrelated to the creditor's claims." 424 F.2d at 298. In so ruling, the Third Circuit quoted from a district court decision, stating:

> "It is settled that a creditor who proves a claim submits himself to the summary jurisdiction of the Bankruptcy Court in respect of preferences or voidable transfers, including the jurisdiction of the Bankruptcy Court to enter a monetary judgment or order a return. *It also appears to be fairly well settled that a creditor who files his claim in the Bankruptcy Court impliedly consents to be sued on counterclaims arising out of the same transaction,* but that such a filing does not constitute implied consent to be

---

consent to the bankruptcy court's summary jurisdiction of a counterclaim arising from the same transaction as that from which the proof of claim arises." *Id.* at 925. Adopting the same view, the Ninth Circuit noted:

> Any other rule would require a trustee to split a cause of action by defending against the claim in the summary proceedings and

then seeking affirmative relief in a plenary suit. By filing a claim appellants agreed to submit their side of the controversy to the bankruptcy court's adjudication. In submitting one side of a controversy for resolution logic dictates that the entire controversy should be open for resolution.

*Id.*

sued on an alleged cause of action arising out of a different subject matter." 424 F.2d at 298 (emphasis added) (*quoting In re Beasley–Gilbert's, Inc.,* 285 F.Supp. 359, 361 (S.D.Ohio 1968)). While dicta in this case, it appears that the *Solar Mfg. Corp.* rule with regard to counterclaims arising out of the same transaction as the claim filed by the creditor has continued vitality post-*Katchen.*

In 1989, the Supreme Court decided *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). The issue in this case was "whether a person who has not submitted a claim against the bankruptcy estate has a right to a jury trial when sued by the trustee to recover an allegedly fraudulent money transfer." *Id.* at 36, 109 S.Ct. 2782. The Supreme Court reasoned that "[u]nless a legal cause of action [such as a fraudulent conveyance action] involves 'public rights,' Congress may not deprive parties litigating over such a right of the Seventh Amendment's guarantee to a jury trial." *Id.* at 53, 109 S.Ct. 2782. Focusing on the matter at hand, the Supreme Court concluded that a bankruptcy trustee's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2) "seems more accurately characterized as a private rather than a public right." *Id.* at 55, 109 S.Ct. 2782. Consequently, the Supreme Court held that, notwithstanding the fact that 28 U.S.C. § 157(b)(2)(H) designates fraudulent conveyance actions as "core proceedings," the Seventh Amendment entitles such a person to a trial by jury. In so holding, the Supreme Court commented upon its decision in *Katchen,* stating:

> We read ... *Katchen* as holding that, under the Seventh Amendment, a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate[.] Because

petitioners here ... have not filed claims against the estate, respondent's fraudulent conveyance action does not arise "as part of the process of allowance or disallowance of claims." Nor is the action integral to the restructuring of the debtor-creditor relations. Congress therefore cannot divest petitioners of their Seventh Amendment right to a trial by jury. *Katchen* thus supports the result we reach today[.]

492 U.S. at 58–59, 109 S.Ct. 2782.

In a footnote in *Granfinanciera,* the Supreme Court commented on a trustee's ability to obtain affirmative relief when the creditor has filed a proof of claim, stating:

> [O]nce a creditor has filed a claim against the estate, the bankruptcy trustee may recover the full amount of any preference received by the creditor-claimant, even if that amount exceeds the amount of the creditor's claim.

*Id.* at 59 n. 14, 109 S.Ct. 2782. Although affirming *Katchen's* holding as to the availability of affirmative relief in preference suits, the Court did not take the opportunity to rule on the availability of that relief when a preference was not at issue.

One year later, the Supreme Court issued *In re Langenkamp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), ruling that a creditor who has submitted a claim against the bankruptcy estate has no right to a jury trial in a preference action instituted against it by the trustee. Explaining its decision, the Supreme Court opined:

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. 492 U.S., at 58–59, and n. 14, 109 S.Ct. 2782.... If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the

claims-allowance process which is triable only in equity. *Ibid.* In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through bankruptcy court's *equity jurisdiction. Granfinanciera, supra,* 492 U.S., at 57–58, 109 S.Ct. 2782. . . . As such, there is no Seventh Amendment right to a jury trial. If a party does *not* submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances, the preference defendant is entitled to a jury trial. 492 U.S., at 58–59, 109 S.Ct. 2782 . . . [.]

498 U.S. at 44–45, 111 S.Ct. 330 (italics in original).

The Third Circuit applied the Supreme Court's teaching in *Langenkamp* in its subsequent decision in *Travellers International AG. v. Robinson,* 982 F.2d 96 (3d Cir.1992). In this case, the appellant, Travellers International AG ("Travellers"), obtained a judgment in excess of twelve million dollars against the debtor for breach of contract. *Id.* at 97. Seeking a stay of execution pending appeal, the debtor deposited over thirteen million dollars with the clerk of court. Subsequently, the debtor filed for relief under Chapter 11 of the Code and filed a complaint against Travellers in the bankruptcy court seeking a declaration that the deposit was a preferential transfer which was voidable or, alternatively, a declaration that the deposit be turned over to the debtor as property of its estate. On the day before the claims bar date, Travellers filed a secured proof of claim for the judgment amount which stated that the claim would become unsecured if debtor prevailed on the appeal. In a footnote on the proof of claim, Travellers stated that it did not "by filing this

claim, waive its demand for a jury trial in" the debtor's adversary proceeding. *Id.* Thereafter, Travellers filed a motion asking the district court to withdraw the debtor's adversary proceeding from the bankruptcy court. Following a denial of the motion, Travellers petitioned the Third Circuit for a writ of mandamus directing the district court to withdraw the reference from the bankruptcy court for a jury trial in the district court. The Third Circuit denied the petition, concluding that the matter was controlled by *Langenkamp* and observing that the Supreme Court's decision "clearly holds that once a creditor files a claim against the bankruptcy estate, he loses his right to a jury trial in regard to an underlying preference action[.]" *Id.* at 98–99.

Notably, the Third Circuit also specifically rejected the notion that Travellers retained its right to a jury trial because its claim against the estate was filed as "contingent" and denominated as "protective." On this point, the Third Circuit stated:

> The Supreme Court's holdings in *Granfinanciera* and *Langenkamp* leave no doubt that the equitable jurisdiction of the bankruptcy court is exclusive when its jurisdiction has been invoked by the filing of a claim. Where, as in this case, a creditor has filed a claim, even though the claim is couched in protective language and is contingent, that creditor has submitted to the bankruptcy court's equitable jurisdiction and waived any Seventh Amendment right to a jury trial.

*Id.* at 100.

In a footnote to its decision, the Third Circuit further observed that *Langenkamp* was *not* distinguishable on the ground that the preference action therein was commenced after the creditor had filed its

proof of claim. The Third Circuit declared:

> To the extent that *Travellers* attempts to distinguish *Langenkamp* by arguing that the Supreme Court case refers only to those preference actions in which (as in *Langenkamp*) a claim is filed before the preference action was brought, its position is unsupportable. No court has made such a distinction nor do we find such a distinction persuasive.

*Id.* at 100 n. 4.

Finally, in April of 1994, the Third Circuit issued *Billing v. Ravin, Greenberg & Zackin, P.A.,* 22 F.3d 1242 (3d Cir.1994). In this case, the appellant, Ravin, Greenberg & Zackin, P.C. ("Ravin"), was bankruptcy counsel for the appellees who were the debtors in a Chapter 11 case. Ravin filed an application for fees with the bankruptcy court; the debtors objected to the application primarily on the ground that Ravin had committed legal malpractice. The debtors also filed a separate malpractice action in the district court, invoking their right to a jury trial under the Seventh Amendment. The district court agreed with debtors that they had a right

to a jury trial and denied Ravin's motion for referral of the malpractice action to the bankruptcy court. The issue on appeal was whether the debtors had a right to trial by jury. The Third Circuit concluded that even though the debtors' malpractice action constituted a legal claim, debtors did not have a right to a jury trial on the same because "an allegation of legal malpractice raised as a defense to post-petition fees for bankruptcy counsel [ ] falls within the process of the allowance and disallowance of claims." *Id.* at 1253.[10] In so holding, the Third Circuit noted the similarities between the appellant's claim and the appellee's malpractice action, opining, in relevant part:

> [T]he attorneys' claims for fees arose post-petition, as did the debtors' cause of action for malpractice. Moreover, the debtors' malpractice suit mirrors its objections to the allowance of attorney's fees.... [T]he debtors' objections to attorney's fees rested heavily on their claims of malpractice. The district court recognized the interrelated nature of the actions, finding that "the merits of the

10. The Third Circuit ruled that "[t]he debtors have no Seventh Amendment right to trial by jury, not because of specific waiver of Seventh Amendment rights, but because their claim has been converted from a legal one into an equitable dispute over a share of the estate." 22 F.3d at 1253. In a footnote, the Third Circuit elaborated on this statement, explaining:

> Other district courts and bankruptcy courts have also preferred the conversion theory to the waiver theory in the context of the debtor's right to trial by jury. The United States District Court for the Middle District of Tennessee stated that the loss of a jury right is not based on any waiver of Seventh Amendment rights by the creditor, but is based on the idea that once the creditor makes a claim against the bankruptcy estate, any subsequent fraudulent conveyance or preference counterclaim by the trustee is equivalent to an objection to the creditor's

claim, and therefore part of the claims allowance process. *In re Washington Mfg. Co.,* 133 B.R. 113, 117 (M.D.Tenn.1991) (*citing Granfinanciera,* 492 U.S. at 59 n. 14, 109 S.Ct. at 2799 n. 14). Significantly, the court found that because the creditor had already filed a proof of claim, the trustee had no right to a jury trial on its fraudulent conveyance and preference counterclaims. *Id.* The bankruptcy court in *Frost, [Inc. v. Miller, Canfield, Paddock & Stone, P.C.],* 145 B.R. 878, held that a debtor does not waive all right to a jury trial by filing a voluntary petition. *Id.* at 882. A creditor also does not possess the power to waive the debtor's jury rights by filing a proof of claim. *Id.* at 883. Instead, "[s]ince the adversary proceeding brought by the Debtor implicated the claims allowance process no Seventh Amendment right to a jury trial exists." *Id.* at 882–83.

22 F.3d at 1253 n. 20.

malpractice claims must be resolved before there can be a resolution of the fee dispute." *The close connection between the malpractice action and the objections to fees leads us to conclude that the debtors' allegations of malpractice are part of the process of allowance and disallowance of claims.*

*Id.* at 1252 (*quoting Billing v. Ravin, Greenberg & Zackin, P.A.,* 150 B.R. 563, 570 n. 2 (D.N.J.1993)) (emphasis added).

The Third Circuit also discussed the Supreme Court's decision in *Langenkamp,* stating:

*Langenkamp* is the whole-hearted embrace of *Katchen* that *Granfinanciera* apparently avoided. *Langenkamp seems to formulate a bright-line rule, holding that creditors who file proofs of claim against the estate are not entitled to a jury trial on matters affecting the allowance of those claims.* The Court interpreted *Granfinanciera* as recognizing that by filing a proof of claim a creditor triggers the process of allowance and disallowance of claims, and thus submits itself to the bankruptcy court's equitable jurisdiction.

*Id.* at 1248–49 (emphasis added). Moreover, in a footnote in its decision, the Third Circuit rejected the argument that the debtors' request for affirmative relief in its malpractice action took it outside of the claims allowance process, stating:

The debtors' emphasis on the fact that the malpractice complaint seeks money

damages in addition to disallowance of attorney's fees is misplaced. The Supreme Court stated in *Granfinanciera* that "once a creditor has filed a claim against the estate, the bankruptcy trustee may recover the full amount of any preference received by the creditor-claimant, even if that amount exceeds the amount of the creditor's claim." 492 U.S. at 60 n. 14, 109 S.Ct. at 2800 n. 14. The logic is equally applicable to the situation presented to us here.

*Id.* at 1252 n. 17.

### B.

▪ The foregoing Supreme Court and Third Circuit decisions support two broad principles which apply here. First, counterclaims that could affect the allowance or disallowance of a proof of claim are part and parcel of the claims allowance process and are subject to the bankruptcy court's equitable jurisdiction. The Supreme Court has repeatedly held as much in the context of an adversary action which asserts fraudulent conveyance or preference claims. *See In re Langenkamp,* 498 U.S. at 44–45, 111 S.Ct. 330; *Granfinanciera,* 492 U.S. at 58–59, 109 S.Ct. 2782; *Katchen,* 382 U.S. at 330, 86 S.Ct. 467. It has not reached the issue of whether this principle applies to other types of claims. *See id.* at 326 n. 1, 86 S.Ct. 467. However, in *Billing,* the Third Circuit extended the aforementioned principle beyond the realm of preference and fraudulent conveyance claims to a legal malpractice action.[11] In light of *Billing,* I conclude that this

---

11. Courts in other jurisdictions in adjudicating non-avoidance actions have likewise looked to whether the claims allowance process was invoked as determinative of bankruptcy court equitable jurisdiction and the right to a jury trial. *See, e.g., Germain v. Connecticut National Bank,* 988 F.2d 1323, (2d Cir.1993) (ruling that post-petition lawsuit filed by Chapter 7 trustee against creditor which filed a proof of claim against the estate was not part of the claims-allowance process

because resolution of the trustee's lawsuit would not affect the allowance of the creditor's claim and, as such, that trustee had not waived right to jury trial in lawsuit); *Dietert v. Dietert (In re Dietert),* 271 B.R. 499, 506–07 (Bankr.S.D.Tex.2002) (concluding that bankruptcy court has jurisdiction to decide counterclaims to proof of claim to the extent "all elements necessary to adjudication of the counterclaim are part of the adjudication of the objection to the claim[,]" but that "[t]he

Court's equitable jurisdiction is invoked in the instant adversary proceeding to the extent it presents claims that could affect the allowance or disallowance of Pinnacle's proof of claim. Moreover, the fact that a request for affirmative relief in a counterclaim to a proof of claim is made does not in and of itself deprive the bankruptcy court of its equitable jurisdiction over these claims. *See Granfinanciera,* 492 U.S. at 59 n. 14, 109 S.Ct. 2782; *Katchen,* 382 U.S. at 337–38, 86 S.Ct. 467; *Billing,* 22 F.3d at 1252 n. 17.

■ Second, based on the Third Circuit's decisions in *In re Carnell Construction,* 424 F.2d at 298, and *In re Solar Manufacturing Corp.,* 200 F.2d at 329–331, I conclude that a creditor who files a claim in the bankruptcy court in this circuit impliedly consents to being sued on

counterclaims arising out of the same but not unrelated transactions. *See also In re Copeland,* 531 F.2d 1195, 1209 (3d Cir. 1976) (*citing In re Carnell Construction, supra*) ("[I]n cases where a creditor has filed a proof of claim with the bankruptcy court, that court may entertain summary jurisdiction over an appropriate counterclaim, where the counterclaim arises out of the transaction that is the subject matter of the creditor's claim."). While the Supreme Court did not specifically adopt this principle in *Katchen, Langenkamp* or *Granfinanciera,* it did not reject it. Moreover, in *In re Commodity Futures Trading, supra,* 478 U.S. at 852, 106 S.Ct. 3245, the Supreme Court indicated that in *Katchen,* it had held as much.[12]

■ The submission to bankruptcy court jurisdiction arising from the filing of

---

creditor retains a right to a jury trial with respect to any issue that need not be adjudicated as part of the allowance of the claim or an objection to the claim."); *In re County of Orange,* 203 B.R. 977, 979–80 (Bankr.S.D.Cal. 1996) (concluding that, by filing proof of claim, creditor submitted to jurisdiction of the bankruptcy court over the claim and the counterclaims asserted thereto for breach of contract, negligence and aiding and abetting breach of a fiduciary duty which debtor asserted in an adversary action since the "proceedings [were] integral to the restructuring of the debtor-creditor relationship" between the creditor and the debtor); *Romar International Georgia, Inc. v. Southtrust Bank of Alabama (In re Romar International Georgia, Inc.),* 198 B.R. 407 (Bankr.M.D.Ga.1996) (concluding that by filing lender liability action in bankruptcy court after defendant filed a proof of claim, debtor subjected itself to the bankruptcy court's "equitable powers to allow, disallow and offset mutual debts[.]"); *Fang Operators, Inc. v. Carpenter (In re Fang Operators, Inc.),* 158 B.R. 643 (Bankr. N.D.Tex.1993) (concluding that the bankruptcy court had summary jurisdiction over the debtor's adversary action since it "arises from the same transactional basis as defendants' proof of claim" and "the court's decision on the [d]ebtor's complaint will be dispositive of the defendant's claims against the estate.").

**12.** The same transaction rule gamers support outside the circuit as well. *See, e.g., Ohio v. Madeline Marie Nursing Homes,* 694 F.2d 449, 456 (6th Cir.1982) (*quoting In re Oxford Marketing Limited,* 444 F.Supp. 399, 402 (N.D.Ill. 1978)) (recognizing that "when faced with the question whether submission of a claim served as consent to summary jurisdiction over a counterclaim, 'the clear majority of courts have held that summary jurisdiction only extends to counterclaims arising out of the same transaction as the creditor's claim and do not reach permissive counterclaims....' "); *The Splash v. The Irvine Company (In re Lion Country Safari, Inc.),* 124 B.R. 566, 569 (Bankr.C.D.Cal.1991) (concluding that "[r]eason and precedent compelled me to accept" the rule that "a debtor's counterclaim arising from the same transaction as the creditor's claim against the estate may be decided in the same manner as the claim, because it is merely another part of the same legal controversy."); *Taubman Western Associates, No. 2 v. Beugen (In re Beugen),* 81 B.R. 994, 1000 (Bankr.N.D.Cal.1988) (noting that "[n]umerous courts have held that a claim and a counterclaim arising out of the same transaction comprise a single legal controversy that should not be divided.").

a proof of claim cannot be avoided by couching the proof of claim in protective language as the Third Circuit made clear in *Travellers International A.G., supra*, 982 F.2d at 98–100. In that case, similar to Pinnacle here, the creditor stated in its proof of claim that, by filing the claim, it did not intend to waive its demand for a jury trial in the debtor's adversary proceeding. The creditor also filed a motion with the district court to secure the right to a jury trial on the adversary action or, in the alternative, obtain a non-jury adjudication from an Article III court. These facts did not deter the Third Circuit from ruling that by filing its proof of claim the creditor had waived its right to a jury trial and submitted itself to the jurisdiction of the bankruptcy court over the claims raised by the debtor in the adversary proceeding.

## C.

■ Pinnacle in its brief provides no insight into its view of the applicability of the principles espoused in the above Supreme Court and Third Circuit decisions to the matter at hand. Rather it focuses almost exclusively on whether a creditor submits to the equitable jurisdiction of the bankruptcy court when it files a protective or defensive proof of claim under protest in order to preserve its right to the claim. Failing to note the *Travellers* decision, its principal support for this argument is the decision of the Third Circuit in *Beard v. Braunstein*, 914 F.2d 434 (3d Cir.1990). In *Beard v. Braunstein*, the Chapter 7 trustee commenced an adversary proceeding against Braunstein seeking to recover rent from him and a declaratory judgment that an alleged option to purchase was invalid. Braunstein moved to dismiss the action, asserting that it was not a core proceeding and the bankruptcy court did not have jurisdiction over the matter. The bankruptcy court denied the motion and

ruled that the action was a core proceeding under 28 U.S.C. § 157(b). Braunstein then answered the complaint and, although he had not filed a proof of claim, counterclaimed denying liability, requesting a dismissal of the action and requesting damages based on the poor condition of the rented premises. He also made a jury demand. The action was eventually tried in the bankruptcy court without a jury, and judgment was granted for the trustee.

On appeal to the Third Circuit, Braunstein argued that he had been improperly denied a jury trial as guaranteed by the Seventh Amendment. The Court rejected the trustee's argument that there is no right to jury trial where a matter is a core proceeding based on the Supreme Court's decision in *Granfinanciera* which held that a person who has not submitted a claim against the bankruptcy estate retains a right to a jury trial when sued for a fraudulent transfer notwithstanding Congress' designation of such a proceeding as core. The Third Circuit held that the trustee's action was a legal action involving a private right and, as such, that Braunstein was entitled to a trial by jury. In considering the impact of Braunstein's counterclaim on his right to a jury trial, the Third Circuit reasoned that since the counterclaim "was compulsory and was only made after [Braunstein's] motion to dismiss was denied on the ground that the proceeding was core[,]" Braustein had not waived his right to object to the jurisdiction of the bankruptcy court. *Id.* at 441–42.

Pinnacle contends that "[t]he *Beard* decision makes it very clear that a party that is forced to assert a compulsory claim against a debtor is not always deemed to have consented to the bankruptcy court's jurisdiction where it has previously made its objection to the exercise of such jurisdiction clear." Pinnacle's Brief at 10. Pinnacle acknowledges that *Beard* in-

volved a compulsory counterclaim rather than a proof of claim, but asserts that its Proof of Claim was also "compulsory" since it had to file the claim or it would have forfeited "a claim valued at over $500,000." *Id.*

I am not persuaded by this argument. *Beard* is distinguishable from the facts of the instant case because Braunstein never filed a proof of claim and he filed his compulsory counterclaim only after the bankruptcy court ruled that Beard's adversary proceeding was a core proceeding. In contrast, Pinnacle filed a proof of claim and did so after I had granted its motion to abstain and remanded the State Court Action so that Pinnacle could exercise its right to a jury trial. In other words, Beard filed its compulsory counterclaim after a bankruptcy court ruling which forced him to litigate in the bankruptcy court. Pinnacle filed its Proof of Claim after obtaining a ruling which enabled it to obtain a jury trial on its claim in State Court. Based upon the Third Circuit's teaching in *Travellers International AG, supra,* Pinnacle, by filing its Proof of Claim, submitted itself to the equitable jurisdiction of this Court and the fact that the Debtor asserted its claims against Pinnacle before it filed its Proof of Claim is irrelevant. *Travellers International AG,* 982 F.2d at 100 n. 4.

Nor do I find the other legal authority cited by Pinnacle dispositive of this contested matter.[13] In *Kamine/Besicorp Allegany, L.P. v. Rochester Gas & Electric Co. (In re Kamine/Basicorp Allegany, L.P.),* 214 B.R. 953 (Bankr.D.N.J.1997), the debtor and Rochester Gas & Electric Co. ("RG & E") were parties to a Power Purchase

**13.** In *Roddam v. Metro Loans,* 193 B.R. 971 (Bankr.N.D.Ala.1996), also cited by Pinnacle as support for its argument, the debtor filed a pre-petition lawsuit which the defendants therein removed to the bankruptcy court after the debtor filed a Chapter 13 case. After one of the defendants, Metro Loans, Inc. ("Metro"), filed a secured proof of claim, the debtor's bankruptcy case was converted to a "no asset" Chapter 7 case and the debtor as well as the Chapter 7 trustee sought to have the pre-petition lawsuit remanded to the state court. In granting the motion to remand, the bankruptcy court reasoned, in pertinent part, that, "under the peculiar circumstances" of the case, the fact that one of the defendants filed a proof of claim "does not mean that the debtor's [pre-]petition lawsuit ... is a 'core' proceeding under § 157(b)(2)(C)." *Id.* at n. 14. The bankruptcy court reached this conclusion based on the fact that there was no claim against the estate for the purposes of 28 U.S.C. § 157(b)(2)(A) since the case was a "no asset" Chapter 7 proceeding, the claim was fully secured and would be paid out of the creditor's collateral and, in any event, the debtor did not object to its allowance, so that the claims allowance process was not implicated .. Accordingly, "section 157(b)(2)(C) would not serve to vitiate the debtor's or trustee's absolute right to a jury trial on the state law claims against Metro." *Id.* at 980 n. 14. In contrast to the facts of the aforementioned case, the Debtor in the instant case is currently reorganizing under Chapter 11. Moreover, Pinnacle filed an unsecured claim to which Debtor objects which means that the allowance or disallowance of Pinnacle's claim is at issue. Consequently, the rationale upon which the *Roddam* court relied in ruling that the pre-petition lawsuit did not constitute a "core" proceeding under § 157(b)(2)(C) does not apply to the instant case.

In *Roddam,* the bankruptcy court also stated:

The resemblance of Mr. Roddam's lawsuit against Metro to a true "core proceeding" envisioned under section 157(b)(2)(C) is, at best, slight. Courts have declined to label a debtor's prepetition lawsuit as "core" even after a creditor has filed a proof of claim, under circumstances much less tenuous than those presented in the present case. Pinnacle cites *Roddam* for the string cite of over 15 cases which the bankruptcy court listed in support of the second sentence quoted above. *See* Pinnacle's Brief at 17. However, Pinnacle did not discuss any of the cases included in the string cite in its brief, a task it presumably would have undertaken if any of the cases were directly on point.

Agreement ("PPA"). RG & E commenced an action ("New York Action") in state court raising claims relating to the debtor's performance under the PPA. The debtor answered and counterclaimed for, *inter alia*, specific performance of the PPA and breach of contract. Thereafter, the debtor filed a Chapter 11 bankruptcy case and commenced an adversary proceeding ("Bankruptcy Action") against RG & E asserting claims substantially similar to the ones asserted in the counterclaim to the New York Action. The debtor also filed a motion seeking temporary injunctive relief requiring RG & E to perform under the PPA. In the bench opinion that followed, the bankruptcy judge, while denying the debtor's request for injunctive relief, found that the Bankruptcy Action was a core proceeding and set it for expedited trial. On the same date, RG & E filed an application ("Application") for change of venue of the case or the Bankruptcy Action or for limited relief from the automatic stay to pursue the New York Action. Finding that the issues raised in the Bankruptcy Action were core matters, the bankruptcy court issued a second bench opinion denying the Application. While the bankruptcy court's "ruling finding core jurisdiction was the law of the case," *id.* at 960, RG & E filed an answer to the complaint in the Bankruptcy Action, denying that the bankruptcy court had jurisdiction over the Bankruptcy Action, that venue was proper and that the Bankruptcy Action was a core proceeding. RG & E also filed a notice of appeal of the bankruptcy court's order denying its Application. Pursuant to the debtor's request, a bar date was then set for filing proofs of claim, and RG & E filed a timely proof of claim albeit stating that it was being submitted subject to its objections regarding the court's jurisdiction.

After the filing of the proof of claim, the district court reversed the bankruptcy court's order denying RG & E's Application insofar as it characterized certain claims in the Bankruptcy Action as "core matters," while rejecting RG & E's request for change of venue and abstention. In response, the debtor filed (1) another adversary action setting forth its objections and counterclaims to RG & E's proof of claim which mirrored in many respects the claims asserted in the Bankruptcy Action and (2) a motion for reconsideration of the district court's decision on appeal and for permission to supplement the record on appeal, contending that a new "core" jurisdictional basis existed since RG & E had filed a proof of claim and debtor had filed another adversary action raising objections and counterclaims in response. The district court denied the motion for reconsideration, finding that the issue of whether a new "core" jurisdictional basis existed by reason of the filed proof of claim and new adversary proceeding should be addressed by the bankruptcy court.

Fulfilling that directive, the bankruptcy court held that RG & E did not submit to the core jurisdiction of the bankruptcy court by filing its proof of claim and that the debtor's counterclaim to the proof of claim, asserting state law causes of action, was not a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(C). Pinnacle urges me to follow that ruling here. I respectfully refuse to do so concluding that the court did not intend its application to be so broad. As the court stated, ("[W]e hold . . . that the . . . filing of the Proof of Claim and the Objection and Counterclaims with respect thereto . . . did not, *under the facts and procedural history of this particular case,* create a new core jurisdiction for this Court to review the state law, non-core claims of [the adversary proceeding]."). *Id.* at 965 (emphasis added).

The dispositive factual and procedural event underpinning the *Kamine/Besicorp* ruling was that RG & E had filed its proof of claim while the court's "finding of core jurisdiction was still law of the case" and only after RG & E had taken "all reasonable measures" to object to the bankruptcy court's jurisdiction by, *inter alia,* filing its Application, asserting objections to jurisdiction in its answer to the Bankruptcy Action and appealing the bankruptcy court's order asserting core jurisdiction. *Id.* at 967, 971. The bankruptcy court found the following rationale from the Ninth Circuit's decision in *Piombo Corporation v. Castlerock Properties (In re Castlerock Properties),* 781 F.2d 159 (9th Cir.1986), "on point" and quoted it, stating:

> "The only one of the specific provisions which might apply to Castlerock's counterclaims is section 157(b)(2)(C), 'counterclaims by the estate against persons filing claims against the estate.'" However, *it seems unfair under the facts of this case to categorize the counterclaims as falling within this provision. The counterclaims were asserted before the Proof of Claim was filed. Piombo would not have filed the Proof of Claim if the bankruptcy court had declined Jurisdiction over the counterclaims.*

214 B.R. at 970 (*quoting Castlerock Properties, supra,* 781 F.2d at 161–62 and adding emphasis).

The bankruptcy filing in *Castlerock Properties* stayed a state court contract action involving the debtor and Piombo. In response to a motion for relief from stay by Piombo, the debtor filed an answer incorporating state law counterclaims against Piombo. The bankruptcy judge decided to try the counterclaims in connection with the motion. Piombo's moved to dismiss or sever the counterclaims was denied, and it subsequently filed an answer to the counterclaims and later filed a Proof of Claim. While continuing to object to trying the counterclaims in a relief from stay proceeding, Piombo moved in the alternative to bring its own counterclaim. The bankruptcy court denied both requests. At the pretrial conference, Piombo objected to the bankruptcy court's jurisdiction as well as subsequently moved the district court to withdraw its reference to the bankruptcy court, arguing that bankruptcy jurisdiction over the state law claims was unconstitutional. The motion was summarily denied. The bankruptcy court tried the relief from stay issue and the debtor's contract counterclaims and entered judgment for the debtor. However, the district court subsequently entered an order holding that the bankruptcy court did not have jurisdiction to determine the substantive issues. On appeal, the debtor relied "upon well-settled law that a creditor consents to jurisdiction over related counterclaims by filing a proof of claim." *Id.* at 162. However, the Ninth Circuit noted that the debtor cited "no case in which the filing of a proof of claim followed the bankruptcy court's assertion of jurisdiction over the counterclaims despite objections from the creditor." *Id.* Elaborating on this point, the Ninth Circuit stated:

> The purpose of the rule, to prevent a bankruptcy trustee from having "to split a cause of action by defending against the claim in the summary proceedings and then seeking affirmative relief in the plenary suit," [citation omitted] is not served by forcing the creditor to file a proof of claim as a defensive maneuver, thereby conferring jurisdiction on the bankruptcy court. Asserting an affirmative defense does not constitute consent. [citation omitted]. By analogy, Piombo's filing the proof of claim should be not deemed consent.

781 F.2d at 162–63.

In contrast to the factual situations in both *Kamine/Besicorp Allegany, L.P.* and

*Castlerock Properties*, this Court did not assert core jurisdiction over the state law counterclaims at issue before Pinnacle filed its Proof of Claim. Rather, I specifically granted Pinnacle's motion to abstain from the State Court Action and remanded it so that Pinnacle's request for a jury trial would be protected. 264 B.R. at 393–98. Consequently, when it filed its Proof of Claim, Pinnacle, unlike RG & E and Piombo, was not being forced to litigate in this court.

Pinnacle argues that, "[l]ike the debtor in *Kamine/Besicorp*, [Debtor] seeks to convert its pending State Court Action into a core proceeding by reasserting it, unnecessarily, in the form of a counterclaim to the Proof of Claim. In this way, Debtor seeks to divest Pinnacle of its right to a jury trial on [Debtor's] State Court causes of action[.]" Pinnacle's Brief at 17. Pinnacle continues its argument, asserting that "[w]hatever the effect the Proof of Claim may have on Pinnacle's *Counterclaim* in the State Court Action, it should not divest Pinnacle of its right to defend [against Debtor's] Complaint in the State Court Action before a jury of its peers." *Id.* (emphasis in original) In essence, Pinnacle is arguing that it should be treated differently from other creditors against which a debtor files counterclaims in response to a proof of claim because the counterclaims which Debtor filed in response to its Proof of Claim were originally asserted three months before Debtor filed for bankruptcy in pre-petition lawsuit which I remanded back to State Court after Debtor removed it so that Pinnacle would retain its right to a jury trial. I disagree that these circumstances justify treating Pinnacle differently. Had the Debtor *not* filed the pre-petition State Court Action, Pinnacle would have been in the same position as it is here. Pinnacle would have had to choose whether to file a proof of claim and thereby submit to the bankruptcy court's jurisdiction or forfeit the claim. Moreover, Debtor would have still had the option of asserting its counterclaims to the Proof of Claim. Had Debtor opted to file counterclaims, the determination of whether those claims were within the core jurisdiction of this Court would have been subject to the standard discussed in Part B above. Thus, Pinnacle's rights with regard to the counterclaims have not been adversely affected as a result of the pre-petition claims pending in the State Court Action. Therefore, I reject Pinnacle's contention that, under the facts of the instant case, there is an equitable basis for deviating from the principles generally applied in deciding whether a creditor, by filing its proof of claim, has submitted to the equitable jurisdiction of the bankruptcy court over a debtor's counterclaims.

### D.

■ Having concluded that this Court has equitable jurisdiction over the counterclaims asserted in Counts II and III of the Adversary Complaint if their resolution is part and parcel of the claims allowance process and/or the counterclaims arise out of the same transaction which forms the basis of Pinnacle's Proof of Claim, I must now apply that principle to the facts of this case. Debtor contends Counts II and III of the Adversary Complaint implicate the claims allowance process since, in order to resolve its Objection to the Proof of Claim, I must necessarily determine which party (Debtor or Pinnacle) breached the Lease and then grant the appropriate relief, namely the allowance or disallowance of Pinnacle's claim. Debtor's Brief at 4. Debtor further asserts that if its objection to Pinnacle's claim is sustained and the claim is disallowed, it will have simultaneously established its entitlement to money damages and possession of the Facility.

*Id.* at 4–5. Debtor also argues that Counts II and III arise out of the same transaction which forms the basis of Pinnacle's Proof of Claim, *i.e.*, the Lease.

Clearly, in order to resolve Debtor's objection to Pinnacle's claim for damages under the Lease, I must decide whether Debtor breached it. In ruling on that issue, I will logically be deciding whether Debtor's obligations thereunder were excused by Pinnacle breaching the Lease by failing to pay its monetary obligations thereunder. Stated another way, I will be required to decide whether Pinnacle had a justifiable reason for withholding rental payments to Debtor. Since Debtor seeks damages in Count III of the Adversary Action for Pinnacle's failure to pay rent, a ruling on Pinnacle's claim will effectively decide whether Debtor is entitled to relief on Count III. In *Katchen, supra,* the Supreme Court reasoned that, as part of the claims allowance process, a bankruptcy court had summary jurisdiction over a trustee's action against a creditor to recover a preference since, in ruling on the creditor's proof of claim, the bankruptcy court would be deciding the same issues at stake in the preference action. 382 U.S. at 333–338, 86 S.Ct. 467. Applying this rationale, I conclude that Count III is part and parcel of the claims allowance process. I also note that if I rule in Pinnacle's favor and allow its claim, the amount of its claim may be diminished by the amount of rent which Pinnacle owes for the Facility since even if Debtor breached the Lease, that ruling would not relieve Pinnacle of the duty to pay rent for its use of the Facility.

Moreover, if I decide in favor of Pinnacle on Debtor's claim objection (also memorialized in Count I), I will also be effectively deciding that Debtor is not entitled to relief on Count II wherein it seeks a ruling that it is entitled to possession of the Facility. Consequently, my ruling on

Debtor's claim objection could also dispose of Count II of the Adversary Complaint. Even if I rule in Debtor's favor on its claim objection, that will resolve the major issue underlying Count II, namely whether Pinnacle had any justification for not complying with its monetary obligations under the Lease. The only remaining issues to be addressed for Count II will be whether, under the terms of the Lease, Pinnacle's failure to comply with its monetary obligations thereunder entitled Debtor to terminate the same and whether Debtor complied with the requirements for doing so. Resolution of these issues will require a review of the default and termination provisions of the Lease. Admittedly, these provisions are not relevant to whether Pinnacle's claim should be allowed. Consequently, it is arguable that issues exist with regard to Count II that need not be decided as part of the claims allowance process for Pinnacle's claim. I note, however, that, once the decision is made as to which party breached the Lease (Debtor or Pinnacle), these issues regarding the default and termination provisions of the Lease will, in all likelihood, be susceptible to a legal determination on a motion for summary judgment which means the issues would be decided by a judge rather than a jury anyway.

In any event, I conclude that by filing its Proof of Claim, Pinnacle submitted to the equitable jurisdiction of this Court to decide the counterclaims set forth in Counts II and III because they arise out of the same transaction as Pinnacle's claim against the estate. Pinnacle ceased paying rent on the Facility based on its position that Debtor breached the Lease. In its Proof of Claim, Pinnacle seeks recovery for Debtor's breach of the Lease based on Debtor's alleged failure to deliver the Facility in the condition and make the improvements required by the Lease; in Counts II and III, Debtor seeks posses-

sion of the Facility and monetary damages for Pinnacle's breach of the Lease based on Pinnacle's failure to pay rent and other monetary obligations due thereunder. These claims are unarguably intertwined and require interpretation of the same lease agreement. All of the claims are based on duties and obligations allegedly established by the Lease. The claims, therefore, arise out of the same transaction. *See Wheeling–Pittsburgh Steel Corporation v. Blue Cross and Blue Shield (In re Wheeling–Pittsburgh Steel Corporation)*, 108 B.R. 82, 85 (Bankr.W.D.Pa.1989) (concluding that creditor's claims and debtor's counterclaims arise out of same transaction because they were based on the same agreement); *Taubman Western Associates, No. 2 v. Beugen (In re Beugen)*, 81 B.R. 994, 996 (Bankr.N.D.Cal.1988) (concluding that lessor's claim and debtor's counterclaim arise from the same transaction "because both turn upon the parties' respective rights and duties under a single lease"). It would be nonsensical to decide Pinnacle's side of this controversy without deciding Debtor's side of it. *Peters v. Lines, supra*, 275 F.2d at 925. By filing its Proof of Claim, Pinnacle submitted its side of the controversy to this Court for resolution; "logic dictates that the entire controversy" should be decided together. *Id.*

### E.

In sum, I conclude that Pinnacle has no right to trial by jury on the counterclaims asserted in Counts II and III of the Adversary Complaint. Consequently, Pinnacle has not articulated a basis for dismissing these counts from the complaint. In addition, since it would be judicially efficient to combine trial of the Adversary Proceeding with the hearing on Debtor's objection to Pinnacle's Proof of Claim, it is irrelevant that Count I of the Adversary Action restates Debtor's objection to the Proof of Claim. Pinnacle's request for dismissal of the Adversary Complaint shall be denied.

### II. Motion to Exercise Discretionary Abstention

As an alternative to dismissal, Pinnacle moves for discretionary abstention under 28 U.S.C. § 1334(c)(1). This provision states:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). As I previously observed in *Asousa I, supra*, 264 B.R. at 391:

In determining whether to exercise discretionary abstention, court s consider the following factors:

(1) the presence in the proceeding of nondebtor parties;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of the applicable law;

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. S 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;

(10) the existence of a right to a jury trial;

(11) the burden on the bankruptcy court's docket; and

(12) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.

*In re Chicago, Milwaukee, St. Paul & Pacific Railroad Company,* 6 F.3d 1184, 1189 (7th Cir.1993); *Eastport Associates v. City of Los Angeles (In re Eastport Associates),* 935 F.2d 1071 (9th Cir. 1991).

The aforementioned factors are applied "flexibly" because "their relevance and importance" varies with "the particular circumstances of each case, and no one factor is necessarily determinative." *In re Chicago, Milwaukee, St. Paul & Pacific Railroad Company, supra,* 6 F.3d at 1189. The decision whether to abstain is within the sound discretion of the bankruptcy judge. *In re Thaggard,* 180 B.R. 659, 663 (M.D.Ala.1995).

 In *Asousa I,* I granted Pinnacle's request to abstain from hearing the State Court Action and remanded the same to State Court based on my application of the aforementioned factors to that matter. However, based on Pinnacle's filing of its Proof of Claim, I find that application of the twelve-factor test, as outlined below, to the instant Adversary Complaint.

(1) *The presence in the proceeding of nondebtor parties.*

Since Debtor and Pinnacle are the sole parties to this proceeding, this factor continues to be neutral as applied here.

(2) *The extent to which state law issues predominate over bankruptcy issues.*

Since the resolution of this proceeding will involve primarily state law, state law issues predominate over bankruptcy issues. Consequently, this factor also has not changed and ordinarily favors abstention. However, the issues are now presented as part of a disputed claim against the estate. The adjudication of contested proofs of claim which commonly requires the determination of disputed state law issues is a responsibility of this Court for which abstention would be inappropriate.

(3) *The difficulty or unsettled nature of the applicable law.*

Neither party has identified any difficult or unsettled issue of state law involved in this controversy. Therefore, this factor continues to weigh against abstention.

(4) *The presence of a related proceeding commenced in state court or other nonbankruptcy court.*

The claims asserted in Counts II and III of the Adversary Complaint are substantially identical to the claims which the Debtor asserted in the State Court Action which is currently pending. Consequently, this factor weighs in favor of abstention. However, deferral to the State Court for adjudication of Counts II and III would require two separate proceedings to resolve the issues *inter se.*[14] My decision on the First Motion to abstain was premised on the notion that the parties' contentions

---

**14.** As Pinnacle observes,

Debtor did not have to raise its second and third claims in its Complaint, since it is actively prosecuting those identical claims in the State Court Action.... Absent Debtor's second and third claims, the State Court Action would be adjudicated in Montgomery County, and any objection to the Proof of Claim could be adjudicated in this

should be adjudicated in one forum. Based on the circumstances present at that time, I concluded that forum should be the State Court. With the filing of the Proof of Claim and the pendency of claim litigation in this Court, my rationale for deferring to that forum is no longer sound.

(5) *The jurisdictional basis, if any, other than 28 U.S.C § 1334.*

Since no jurisdictional basis exists in this matter other than 28 U.S.C. § 1334, this factor weighs in favor of abstention.

(6) *The degree of relatedness or remoteness of the proceeding to the main bankruptcy case.*

Based on my findings in *Asousa I,* wherein substantially the same claims were at stake, I conclude that this proceeding is closely related to the Debtor's bankruptcy case. *See Asousa I,* 264 B.R. at 392. A resolution of whether Debtor or Pinnacle breached the Lease and whether Debtor is entitled to regain possession of the Facility from Pinnacle will significantly impact Debtor's ability to sell the property and the price it will be able to obtain. The disposition of this asset is the primary condition to a successful reorganization and the Debtor's exit from these proceedings. Consequently, this factor weighs against abstention.

(7) *The substance rather than form of an asserted "core" proceeding.*

Debtor contends this matter is a "core" proceeding since it raises counterclaims to Pinnacle's Proof of Claim. Pinnacle dis-

agrees, arguing merely that since the claims asserted in the Adversary Proceeding were originally asserted in the State Court Action, they can clearly arise outside of the bankruptcy context and, as such, are not core proceedings.[15] Significantly, Pinnacle never addresses the specific type of claims at issue here, namely counterclaims which arise from the same transaction as a proof of claim and involve the same or many of the same issues as a proof of claim.

In *Halper v. Halper,* 164 F.3d 830 (3d Cir.1999), the Third Circuit enunciated a two-part test for determining whether a proceeding is a "core" proceeding, stating:

> First, a court must consult [28 U.S.C.] § 157(b). Although § 157(b) does not precisely define "core" proceedings, it nonetheless provides an illustrative list of proceedings that may be considered "core." Second, the court must apply this court's test for a "core" proceeding. Under that test, " 'a proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.' "

*Id.* at 836 (citations omitted). The claims at issue in this adversary proceeding satisfy both prongs of this test. Pursuant to § 157(b)(2)(B), "allowance or disallowance of claims against the estate" constitute core proceedings. Count I as an objection to Pinnacle's Proof of Claim fits 'within this description. Section § 157(b)(2)(C) identifies "counterclaims by the estate against persons filing claims against the estate," as

Court, or held in abeyance until the State Court Action was decided. Pinnacle's Brief at 11. Such bifurcation of a case is contrary to the underpinnings of the decisional law which recognizes that a creditor which submits to the equitable jurisdiction of the bankruptcy court to decide its claim against the estate does so for the purposes of

the adjudication of the estate's claims against it. I reject the suggestion that dual proceedings of interrelated claims are warranted.

15. Notably, Pinnacle's argument on this point spans only eleven lines in its eighteen page brief.

"core" proceedings. *See* 28 U.S.C. § 157(b)(2)(C). Counts II and III fit within this grouping.[16] Moreover, objections to claims and counterclaims which are part and parcel of the claims allowance process, by their nature, could arise only in the context of a bankruptcy case since absent the bankruptcy case, the claims allowance process would not exist. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987) (reasoning that the filing of a claim, which "invokes the special rules of bankruptcy concerning objections to the claim, claims allowance, [and] the estimation of the claim for allowance purposes," is an "example of a proceeding that could only arise in the context of a bankruptcy case."). *See also In re Kewanee Boiler Corporation*, 270 B.R. 912, 918 (Bankr. N.D.Ill.2002) (opining that "bankruptcy courts must have core jurisdiction over claims objections in order to effectively administer the debtor's bankruptcy[.]"). Furthermore, many courts have held that counterclaims which arise from the same transaction as a creditor's proof of claim constitute core proceedings. *See e.g., The*

*Leslie Fay Companies, Inc. v. Falbaum (In re Leslie Fay Companies, Inc.)*, 1997 WL 555607, at *2 (S.D.N.Y. Sept.4, 1997) (concluding that adversary proceeding, which asserts claims arising out of the same transaction as the proofs of claim filed by the creditors and requiring consideration of the same issues raised by the proofs of claim, is a core proceeding under § 157(b)(2)(C)); *Lombard–Wall Incorporated v. New York City Housing Development Corp. (In re Lombard–Wall Incorporated)*, 48 B.R. 986, 990–91 (S.D.N.Y.1985) (ruling that, since adjudication of both proof of claim and adversary proceeding would require interpretation of the same agreement and both claims arose out of the same transaction, the adversary proceeding was a core proceeding within the meaning of § 157(b)(2)(C)); *Nationwide Roofing & Sheet Metal, Inc. v. Cincinnati Insurance Company (In re Nationwide Roofing & Sheet Metal, Inc.)*, 130 B.R. 768, 776 (Bankr.S.D.Ohio 1991) ("This court joins those courts which have held that a counterclaim arising from the same transaction as a proof of claim filed against

---

**16.** In *Marshall v. Marshall (In re Marshall)*, 264 B.R. 609 (C.D.Cal.2001), the district court observed that "most courts agree that the plain language of § 157(b)(2)(C) cannot be the end of the analysis [of whether a counterclaim constitutes a core proceeding], because such a construction would conflict with [*Northern Pipeline Construction Co. v.*] *Marathon [Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)]." Elaborating on this issue, the district court states:

> In the statute, Congress set forth its view as to what matters fall within the constitutional parameters, but in interpreting the statute, courts must consider not just the literal language of the statute, but the constitutional concerns behind it. [Citation omitted.] Specifically as to § 157(b)(2)(c), footnote 31 of the plurality opinion in Marathon suggests that it would be unconstitutional to hold that any and all counterclaims are core and therefore can be finally determined by a bankruptcy judge. *Marathon,*

458 U.S. at 79 n. 31, 102 S.Ct. at 2876 n. 31. Thus, on the one hand, calling any counterclaim that falls within the literal language of the statute core seems to contradict the holding of Marathon. On the other hand, calling any counterclaim that could have been asserted as an independent lawsuit non-core seems to render § 157(b)(2)(c) itself nugatory, because any counterclaim could have been asserted as a separate lawsuit absent the filing of the bankruptcy petition. Collier notes this problem and states that "[t]he matter is still unsettled." Collier, *supra* ¶ 3.02[3][d][i].

> It appears that the justification for core treatment for counterclaims is a combination of judicial economy and efficiency for the litigants, in addition to recognition of the fact that practically, adjudication of a counterclaim that is closely related to a claim will almost merge into allowance or disallowance of the claim itself.

264 B.R. at 629–30.

the estate is a core proceeding under § 157(b)(2)(C)"); *Colvard v. Gulf States Drilling Co., Inc. (In re Bar M Petroleum Company, Inc.),* 63 B.R. 343, 347 (Bankr. W.D.Tex.1986) (concluding that "this is the sort of counterclaim, arising out of the same transaction as [d]efendant's claim, that falls within § 157(b)(2)(C) as a core proceeding.").

Despite the characterization of this proceeding as a "core" matter, the substance of the claims at issue are state law matters. The claims constitute pre-petition state law contract claims. Indeed, Debtor originally asserted the claims in the State Court Action prior to filing its bankruptcy case. Normally, this factor weighs in favor of abstention. However, as noted above, unless one court were to hear all the issues raised by the parties, prejudice and significant inefficiency would occur. Given the pendency of the contested proof of claim, abstention in favor of the state court is unadvisable in this case.

(8) *The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.*

Since Pinnacle has submitted itself to the equitable jurisdiction of this Court over its claim and Debtor's objection and counterclaim thereto and, thereby, converted these legal claims into equitable ones, it is not feasible to sever the state law claims from core bankruptcy matters to allow judgments to be entered in the state court. Moreover, since resolution of the claims allowance process for Pinnacle's Proof of Claim will involve the same, or many of the same, issues as the claims asserted in this Adversary Proceeding, it would be extremely inefficient to try these matters separately. Consequently, this factor weighs against abstention.

(9) *The effect or lack thereof on the efficient administration of the estate if the Court abstains.*

In evaluating this factor in *Asousa I,* I concluded that there could be an effect on the efficient administration of debtor's reorganization if I abstained from resolving the claims at issue in the State Court Action. I reasoned that since Debtor does not have funds to satisfy its mortgage or other obligations on the Facility, until and unless the State Court Action is resolved in Debtor's favor, the monthly mortgage payments and other charges for the Facility might remain unpaid which affects the mortgagee and other parties to whom such monies are owed. 264 B.R. at 392. I also noted that abstention could also affect the efficient administration of the estate because until the State Court Action was resolved, Debtor would be hampered in its efforts to market the property which, in turn, will delay its reorganization. *Id.* Since the claims at issue in the State Court Action are substantially identical to those asserted in this proceeding, this rationale is equally applicable here.

However, In *Asousa I,* I concluded that "[t]his factor, while normally weighing in favor of bankruptcy adjudication," was mitigated by the fact that in Debtor's bankruptcy estate, very few creditors other than the principals would be affected by a delay in Debtor's reorganization and, consequently, that while this factor weighed against abstention, it was not "a strong negative factor." *Id.* at 392–93. Seven months have passed since I decided *Asousa I.* It appears that the parties wisely are conducting discovery. Pinnacle's Brief at 7. However, the Chapter 11 case is at a virtual standstill pending the outcome of this litigation. Further delay in resolving the claims asserted here could detrimentally affect the success of Debt-

or's reorganization. As I am charged with administering the Chapter 11 reorganization, case, this passage of time now weighs more strongly against abstention.

(10) *The existence of a right to a jury trial.*

In *Asousa I,* I concluded that Pinnacle had waived its right to a jury trial in federal court by missing the applicable deadline for making its jury demand but that if I granted the motion to abstain and remanded the action to State Court, the right to jury trial would be preserved because the time for asserting that right had not expired. I noted the decision of the United States Supreme Court in *Jacob v. City of New York,* 315 U.S. 752, 752–53, 62 S.Ct. 854, 86 L.Ed. 1166 (1942), which stated:

> The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts.

From this fundamental principle, I concluded that "[g]iven the significance of the right to trial by jury, its loss by my retention of this case weighs heavily in favor of abstention." 264 B.R. at 395. Preservation of Pinnacle's jury right was the decisive factor in my decision to abstain and remand the State Court Action. With the filing of Pinnacle's Proof of Claim and voluntary submission to the equitable jurisdiction of this Court, my analysis of this issue is different. By filing its Proof of Claim, Pinnacle made a conscious decision to preserve its claim against the estate and assumed the risk of forgoing its state court right to a jury trial were I to refuse to abstain from adjudicating the Adversary Complaint. Finding that Pinnacle must accept the burden of its decision along with its benefit, Pinnacle's election negates the most important reason for my prior abstention.

(11) *The burden on the bankruptcy court's docket.*

While the resolution of this proceeding involves predominately state law issues, it would not be a burden for this Court to litigate this matter since: (i) the issues in this proceeding overlap at least to a large extent the issues the issues which must be resolved to determine whether Pinnacle's claim should be allowed; and (ii) a resolution of this proceeding will advance the issue of whether the Debtor will be able to reorganize. Consequently, this factor does not weigh in favor or against abstention.

(12) *The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.*

Based on the history of this case, it is obvious that Debtor wants to have this controversy resolved in the bankruptcy court whereas Pinnacle wants the matter litigated in State Court. In essence, both parties are forum shopping. Admittedly, as Pinnacle has pointed out in its brief, Debtor did not have to assert the Counterclaims in this proceeding since it had already asserted the same claims against Pinnacle in the State Court Action. However, if Debtor had chosen not to assert its claims in this Court in response to Pinnacle's Proof of Claim, Debtor would have been forced to defend against Pinnacle's side of the controversy in this Court while asserting its side of the controversy in State Court. Under such circumstances, Pinnacle cannot fault Debtor for responding to its proof of claim by presenting all the extant issues in this jurisdiction.

**80**

Therefore, this factor neither weighs in favor or against abstention.

Applying all of the factors relevant to determining whether to exercise discretionary abstention and focusing upon the particular circumstances of this case, I conclude that discretionary abstention is not appropriate under 28 U.S.C. § 1334(c)(1), and I will, therefore, deny Pinnacle's motion for the same. Since the matters at issue can be as readily disposed of by this Court as the State Court and since this Court has the responsibility for administering a Chapter 11 reorganization that has been stalled by this procedural skirmish and which depends on the outcome of the litigation for its prosecution, I believe it to be in the best interests of this estate that I retain control of the Pinnacle litigation as well.

An Order consistent with this Opinion shall issue.

### *ORDER*

**AND NOW,** this 26th day of March 2002, upon consideration of Defendant Pinnacle Foods, Inc.'s Motion to Dismiss Complaint and/or Seeking Discretionary Abstention ("Motion") and after a hearing with notice, and for the reasons set forth in the accompanying Opinion;

It is hereby **ORDERED** and **DE-CREED** that the Motion to Dismiss or Abstain is **DENIED.** Defendant shall file an answer to the Adversary Complaint by **April 12, 2002.**